EDMUND G. BROWN JR., State Bar No. 37100
Attorney General of California
STEPHEN G. HERNDON, State Bar No. 130642
Supervising Deputy Attorney General
BRIAN G. SMILEY, State Bar No. 180658
Supervising Deputy Attorney General
MELISSA LIPON, State Bar No. 217719
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 327-9671
 Fax:  (916) 324-2960
 E-mail:  Melissa.Lipon@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KINSON HER,** | 2:09-cv-00612-JAM-KJM |
| Petitioner, | |
| v. | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |
| **FRANCISCO JACQUEZ,** | |
| Respondent. | |

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities ........................................................................ 4

Procedural Summary ..................................................................................................... 4

Factual Summary .......................................................................................................... 6

Governing AEDPA Standards........................................................................................ 9

Argument ...................................................................................................................... 10

I.    Because the Court of Appeal's decision, finding sufficient evidence of murder and attempted murder, reasonably applied the relevant law to the facts, Petitioner's claim of insufficient evidence should be denied .................... 10

II.    The Court of Appeal's finding of sufficient evidence to sustain the firearm and gang enhancements was not contrary to, nor an unreasonable application of, clearly-established United States Supreme Court precedent ........ 13

    A.    Sufficiency of the evidence as to firearm enhancements ......................... 14

    B.    Sufficiency of the evidence as to the gang enhancements ...................... 15

III.    The state courts rejected Petitioner's claims that trial counsel was ineffective, and that decision was not contrary to, nor an unreasonable application of, Supreme Court precedent .......................................................... 17

    A.    Legal standards......................................................................................... 18

    B.    Failure to investigate potential defense witness Vang ............................ 19

    C.    Failure to object to gang expert's opinion ............................................... 22

    D.    Defense counsel's closing argument........................................................ 25

    E.    Petitioner's ineffective assistance claim for failure to call an expert witness is unexhausted, but may be denied because it is not colorable under federal law ....................................................................... 26

IV.    Petitioner's claims related to Detective Stigerts's communication with the jury are not exhausted; however, the claims are not colorable under federal law .............................................................................................................. 28

V.    Petitioner's claim regarding a motion to substitute counsel is not exhausted; however, it is not colorable under federal law .................................. 31

VI.    Petitioner's claim regarding a request to appoint an english interpreter is not exhausted; however, it is not colorable under federal law .............................. 33

VII.    Petitioner's claim regarding testimony describing the bandana  is not exhausted; however, it is not colorable under federal law .................................. 35

VIII.    Petitioner's claim regarding admission of the gang expert's testimony is procedurally barred and to the extent that it is not, it is not colorable under federal law .............................................................................................. 37

IX.    Petitioner's claim regarding denial of a mistrial motion during voire dire is not exhausted; however, it is not colorable under federal law ........................... 40

X.    Petitioner's claim that the trial court refused to file his 995 motion is not exhausted; however, it is not colorable under federal law .................................. 42

i

1

## TABLE OF CONTENTS
(continued)

2

Page

3

XI.   Petitioner's claim that the trial court erred in admitting witness intimidation testimony was not exhausted and fails to state a colorable claim for relief ......... 43

4

XII.  Petitioner's claims that instructional error violated due process was rejected by the California Supreme Court, and that decision was not contrary to, nor an unreasonable application of, supreme court precedent .................................... 46

5

6

XIII. Petitioner's claim that the trial court made sentencing errors under state law does not appear to be exhausted, but the claim may be denied because it is not colorable .................................................................................................... 49

7

XIV.  Petitioner's claim that the trial court erred in admitting his statement was not exhausted and fails to state a colorable claim for relief ................................ 50

8

XV.   The state court's rejection of petitioner's cruel and unusual punishment claim was objectively reasonable ........................................................................ 52

9

10

XVI.  Petitioner's claim that the appellate court erred by not remanding his case for resentencing is procedurally barred and without merit .................................. 57

11

XVII. Petitioner's claim of "cumulative errors" is unexhausted and subject to dismissal; this court may nevertheless deny it because it fails to raise even a colorable federal claim ...................................................................................... 58

12

13

Conclusion ................................................................................................................ 59

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Robertson*,
  520 U.S. 83 (1997)..................................................................................................... 33

*Avila v. Galaza*,
  297 F.3d 911 (9th Cir. 2002)........................................................................... 11, 14, 43, 50

*Beard v. Banks*,
  542 U.S. 406 (2004)................................................................................................ 3, 10

*Beck v. Washington*,
  369 U.S. 541 (1962)....................................................................................... 17, 39, 43, 56

*Bennett v. Mueller*,
  322 F.3d 573 (2003)................................................................................................ 54, 57

*Bracy v. Gramley*,
  520 U.S. 899 (1997)................................................................................................ 10

*Bradshaw v. Richey*,
  546 U.S. 74 (2005)................................................................................................ 45, 50

*Brecht v. Abrahamson*,
  507 U.S. 619 (1993).......................................................................................... *passim*

*Briceno v. Scribner*,
  555 F.3d 1069 ................................................................................................ 17

*Cannon v. Mullin*,
  383 F.3d 1152 (10th Cir. 2004).................................................................................... 23

*Casey v. Moore*,
  386 F.3d 896 (9th Cir. 2004)...................................................................................... 9, 44

*Cassett v. Stewart*,
  406 F.3d 614 (9th Cir. 2005)................................................................................. *passim*

*Castille v. Peoples*,
  489 U.S. 346 (1989)................................................................................................ 8

*Clark v. Groose*,
  16 F.3d 960 (8th Cir. 1994)....................................................................................... 23

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Collier v. Bayer,*
 408 F.3d 1279 (9th Cir. 2005)..................................................................... 39

*Cook v. Shriro,*
 516 F.3d 802 (9th Cir. 2008)....................................................................... 32

*Crater v. Galaza,*
 491 F.3d 1119 (9th Cir. 2007)..................................................................... 9

*Donnelly v. DeChristoforo,*
 416 U.S.637 (1974) ................................................................... 30, 46, 52

*Early v. Packer,*
 537 U.S. 3 (2002) ........................................................................................ 9

*Edwards v. Lamarque,*
 475 F.3d 1121 (9th Cir. 2007)..................................................................... 19

*Emery v. Clark,*
 604 F.3d 1102 (9th Cir. 2010)..................................................................... 17

*Engle v. Isaac,*
 456 U.S. 107 (1982) .................................................................................... 48

*Estelle v. McGuire,*
 502, U.S. 62 (1991) ............................................................................. *passim*

*Fry v. Pliler,*
 551 U.S. 112 (2007) .................................................................................... 23

*Garcia v. Carey,*
 395 F.3d 1099 (9th Cir. 2005)..................................................................... 17

*Graham v. Florida,*
 __ U.S. ___, 130 S.Ct. 2011 (2010) ........................................................... 56

*Granberry v. Greer,*
 481 U.S. 129 (1987) .................................................................................... 27

*Gray v. Netherland,*
 518 U.S. 152 (1996) ............................................................................ *passim*

*Gutierrez v. Griggs,*
 695 F.2d 1195 (9th Cir. 1983)..................................................................... 48

### TABLE OF AUTHORITIES
#### (continued)

Page

*Hall v. Bellmon,*
935 F.2d 1106 (10th Cir. 1991)................................................................ passim

*Hamilton v. Vasquez,*
17 F.3d 1149 (9th Cir. 1994)........................................................................ 20

*Hammond v. United States,*
356 F.2d 931 (9th Cir. 1966))........................................................................ 59

*Hanna v. Riveland,*
87 F.3d 1034 (9th Cir. 1996)........................................................................ 48

*Harmelin v. Michigan*
501 U.S. 957 (1991)............................................................................ 54, 55

*Harrington v. California,*
395 U.S. 250 (1968)................................................................................ 58

*Harris v. Superior Court,*
500 F.2d 1124 (9th Cir. 1974)...................................................................... 27

*Hawkins v. Alabama,*
318 F.3d 1302 (11th Cir. 2003)....................................................................... 9

*Henderson v. Kibbe*
431 U.S. 145 (1977)................................................................................ 48

*Hill v. Roe,*
298 F.3d 796 (9th Cir. 2002)........................................................................ 11

*Hines v. Enomoto,*
658 F.2d 667 (9th Cir. 1981)........................................................................ 39

*Holland v. Jackson,*
542 U.S. 649 (2004)................................................................................ 10

*Hopkinson v. Shillinger,*
866 F.2d 1185 (10th Cir. 1989)..................................................................... 20

*Houston v. Roe,*
177 F.3d 901 (9th Cir. 1999)........................................................................ 25

*Hughes v. Johnson,*
191 F.3d 607 (5th Cir. 1999)........................................................................ 13

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Bower*
    (1985) 38 Cal.3d 865 ................................................................................... 35, 36

*In re Clark,*
    5 Cal.4th 750 (1993) ................................................................................. 5, 54, 57

*In re Harris,*
    5 Cal. 4th 813 (Cal. 1993) ................................................................................. 11

*In re Lawler*
    23 Cal.3d 190 (1979) ........................................................................................ 36

*In re Swain,*
    34 Cal. 2d 300 (1949) ................................................................... 26, 27, 29, 36

*In re Waltreus,*
    62 Cal. 2d 218 (1965) ................................................................... 11, 14, 50

*Jackson v. Virginia,*
    443 U.S. 307 (1979) ...................................................................................... *passim*

*James v. Borg,*
    24 F.3d 20 (9th Cir. 1994) ........................................................................... *passim*

*Jeffries v. Wood,*
    114 F.3d 1484 (9th Cir. 1997) ........................................................................ 13

*Johnson v. Lewis,*
    929 F.2d 460 (9th Cir. 1991) ....................................................................... *passim*

*Jones v. Gomez,*
    66 F.3d 199 (9th Cir. 1995) ......................................................................... *passim*

*Juan H. v. Allen,*
    408 F.3d 1262 (9th Cir. 2005) ............................................................... 12, 13, 17

*Kim v. Villalobos,*
    799 F.2d 1317 (9th Cir. 1986) ..................................................................... *passim*

*LaCrosse v. Kernan,*
    244 F.3d 702 (9th Cir. 2001) ........................................................................... 11

*Lambrix v. Singletary,*
    520 U.S. 518 (1997) ................................................................................... 3, 10

vi

**TABLE OF AUTHORITIES**
(continued)

**Page**

*LePage v. Idaho,*
  851 F.2d 251 (9th Cir. 1988)...............................................................................23

*Little v. Crawford,*
  449 F.3d 1075 (9th Cir. 2006)......................................................................*passim*

*Lockyer v. Andrade,*
  538 U.S. 63 (2003)...............................................................................................9

*Mayle v. Felix,*
  545 U.S. 644 (2005).............................................................................................8

*McDaniel v. Brown,*
  130 S.Ct. 665 (................................................................................................12

*McGee v. Superior Court,*
  34 Cal.App.3d 201 (1973).................................................................................33

*Middleton v. Cupp,*
  768 F.2d 1083 (9th Cir. 1985)...............................................................40, 43, 48

*Milton v. Wainwright,*
  407 U.S. 371 (1972).....................................................................................45, 50

*Mullaney v. Wilbur,*
  421 U.S. 684 (1975).....................................................................................45, 50

*Murtishaw v. Woodford,*
  255 F.3d 926 (9th Cir. 2001)..............................................................................19

*Nelson v. Hargett,*
  989 F.2d 847 (5th Cir. 1993)..............................................................................20

*People v. Cuevas,*
  12 Cal. 4th 252 (Cal. 1995)................................................................................12

*People v. Duvall,*
  9 Cal. 4th 464 (Cal. 1995)..................................................................................26

*People v. Johnson,*
  26 Cal. 3d 557 (Cal. 1980).................................................................................12

*People v. Karis,*
  46 Cal. 3d 612 (Cal. 1988).................................................................................26

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*People v. Marsden*
    2 Cal.3d 118 (1970) ..................................................................... 32

*People v. Morales*
    112 Cal.App.4th 1176 (2003) ......................................................... 24

*People v. Norris*,
    40 Cal.3d 51 (1985) ..................................................................... 33

*People v. Olguin*,
    31 Cal. App. 4th 1355 (Cal. App. 1994) ........................................... 23

*People v. Saunders*,
    5 Cal. 4th 580 (1993) ................................................................... 39

*People v. Vera*,
    15 Cal. 4th 269 (1997) .................................................................. 39

*Rich v. Calderon*,
    187 F.3d 1064 (9th Cir. 1999) ........................................................ 39

*Richardson v. Marsh*,
    481 U.S. 200 (1987) ................................................................. 24, 46

*Robinson v. California*,
    370 U.S. 660 (1962) ...................................................................... 54

*Roettgen v. Copeland*,
    33 F.3d 36 (9th Cir. 1994) ............................................................... 8

*Rose v. Lundy*,
    455 U.S. 509 (1982) ............................................................. *passim*

*Shackleford v. Hubbard*,
    234 F.3d 1072 (9th Cir. 2000) ........................................................ 18

*Shumway v. Payne*,
    223 F.3d 982 (2000) ............................................................. *passim*

*Solem v. Helm*,
    463 U.S. 277 (1983) ................................................................. 54, 55

*Strickland v. Washington*,
    466 U.S. 668 (1984) ...................................................... 18, 19, 22, 30

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Taylor v.Maddox*,
    366 F.3d 992 (9th Cir. 2004).................................................................. 52

*Teague v. Lane*,
    489 U.S. 288 (1989) ..................................................................... 3, 10

*United States ex rel. Cross v. DeRobertis*,
    811 F.2d 1008 (7th Cir. 1987)............................................................. 20

*United States v. Bari*,
    750 F.2d 1169 (2d Cir. 1984).............................................................. 26

*United States v. Berry*,
    814 F.2d 1406 (9th Cir. 1987)......................................................... 20, 28

*United States v. Bosch*,
    914 F.2d 1239 (9th Cir. 1990)............................................................. 22

*United States v. Frady*,
    456 U.S. 152 (1982) ....................................................................... 48

*United States v. Frederick*,
    78 F.3d 1370 (9th Cir. 1996).............................................................. 58

*United States v. Gagnon*,
    470 U.S. 522 (1985) ....................................................................... 30

*United States v. Haili*,
    443 F.2d 1295 (9th Cir. 1971)............................................................. 59

*United States v. Johnson-Wilder*,
    29 F.3d 1100 (7th Cir. 1994).............................................................. 26

*United States v. Murray*,
    751 F. 2d 1528 (9th Cir. 1985)....................................................... 20, 28

*United States v. Popoola*,
    881 F.2d 811 (9th Cir. 1989)......................................................... 19, 20

*United States v. Rogers*,
    769 F.2d 1418 (9th Cir. 1985)............................................................. 19

*United States v. Schaflander*,
    743 F.2d 714 (9th Cir. 1984).............................................................. 19

## TABLE OF AUTHORITIES
### (continued)

Page

*United States v. South,*
    28 F.3d 619 (7th Cir. 1994)......................................................................... 26

*United States v. Taylor,*
    802 F.2d 1108 (9th Cir. 1986)..................................................................... 19

*Wade v. Calderon,*
    29 F.3d 1312 (9th Cir. 1994)....................................................................... 20

*Wainwright v. Witt,*
    469 U.S. 412 (1984).................................................................................... 10

*Warren v. Smith,*
    161 F.3d 358 (6th Cir. 1998)....................................................................... 13

*Williams v. Taylor,*
    529 U.S. 362 (2000) ........................................................................ 3, 9, 12, 17

*Woodford v. Visciotti,*
    537 U.S. 19 (2002) ...................................................................................... 3, 9

*Ylst v. Nunnemaker,*
    501 U.S. 797 (1991) ...................................................................... 11, 14, 43, 50

**STATUTES**

28 U.S.C

    § 2254.......................................................................................................... 3
    § 2244(d)(1)(A) ........................................................................................... 2
    § 2254(b)(1) ................................................................................................. 2
    § 2254(b)(2) ......................................................................................... *passim*
    § 2254(d) .............................................................................................. *passim*
    § 2254(d)(1) ........................................................................... 9, 10, 22, 56, 59
    § 2254(d)(2) ................................................................................................. 9
    § 2254(e) ..................................................................................................... 10
    § 2254(e)(1)................................................................................... 45, 52, 57

Antiterrorism and Effective Death Penalty Act of 1996.................................... *passim*

California Evidence Code
    § 350.......................................................................................................... 37

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

California Penal Code

4

   § 186.22(b), (d) ......................................................................................... 4

   § 187(a) ...................................................................................................... 4

5

   § 190.2(a)(21) ............................................................................................ 4

   § 664 .......................................................................................................... 4

6

   § 12022.53(b) & (e)(1) ............................................................................. 4

   § 12034(d) ................................................................................................. 4

7

**OTHER AUTHORITIES**

8

105 Harv. L. Rev. 245, 251 ............................................................................ 55

9

10

California Rules of Court

   28(c)(2) (Thomson West 2005 rev.) ........................................................... 8

11

CALJIC

12

   No. 2.03 .................................................................................................... 46

   No. 2.06 .................................................................................................... 46

13

   No. 2.51 .................................................................................................... 46

   No. 2.52 .................................................................................................... 46

14

   No. 2.71.5 ................................................................................................. 46

   No. 2.90 .................................................................................................... 46

15

   No. 5.17 .................................................................................................... 46

   No. 5.55 .................................................................................................... 46

16

17

Harv. L.Rev. ................................................................................................... 55

18

United States Constitution

   Eighth Amendment ............................................................................. 54, 55

19

   Fifth Amendment ..................................................................................... 10

20

   Fourteenth Amendment .................................................................. 10, 43, 54

   Sixth Amendment ........................................................... 10, 18, 37, 39, 46

21

United States District Courts,

22

   Rule 5(c) ..................................................................................................... 3

23

24

25

26

27

28

1   Pursuant to the order of this Court, respondent Francisco Jacques, Warden of Pelican Bay

2   State Prison, California Department of Corrections and Rehabilitation, answers the First

3   Amended Petition for Writ of Habeas Corpus ("Pet.") as follows:

**I.**

5   Respondent has lawful custody of Petitioner, a prisoner, pursuant to the August 15, 2005

6   judgment of the California Superior Court, Sacramento County ("the trial court"), case number

7   02F01534, consolidated with case number 02F06418.

**II.**

9   After briefing by the parties (Lodged Docs. 1-5), the Court of Appeal affirmed Petitioner's

10  conviction and modified his sentence in an unpublished decision on November 30, 2007, in case

11  number C051473.  (Lodged Doc. 6.)

**III.**

13  On January 8, 2008, Petitioner filed a petition for review in the Supreme Court of

14  California.  (Lodged Doc. 7.)  On March 12, 2008, the California Supreme Court denied the

15  petition.  (Lodged Doc. 8.)

**IV.**

17  On January 6, and January 22, 2009, Petitioner filed petitions for writ of habeas corpus in

18  the Superior Court in case numbers 09F00415 and 09F00819, asserting the majority of the claims

19  he now raises on federal habeas.  (Lodged Docs. 9, 10.)  The Superior Court consolidated the

20  petitions and denied the claims in a reasoned decision on March 2, 2009.  (Lodged Doc. 11.)

21  On April 13, 2009, Petitioner filed a petition for writ of habeas corpus in the state appellate

22  court raising identical claims in case number C061573, which denied the petition without

23  comment on April 20, 2009.  (Lodged Docs. 12, 13; *see also* Petitioner's Exhibits, Appendix IV.)

24  On June 24, 2009, Petitioner filed his petition with the California Supreme Court, which denied it

25  without comment on November 19, 2009.  (Lodged Doc. 14; *see also* Petitioner's Exhibits,

26  Appendix IV.)

27

28

1

**V.**

On August 24, 2009, Petitioner filed a second petition for writ of habeas corpus with the Third District Court of Appeal.  (Lodged Doc. 15.)  On August 27, 2009, the Court of Appeal denied his claim stating that he must first file the petition in the Superior Court.  (Lodged Doc. 16.)  On September 8, 2009, Petitioner filed the same claims in the Superior Court (Lodged Doc. 17), which denied the petition as successive and untimely, otherwise procedurally barred, and also without merit.  (Lodged Doc. 18.)  Petitioner then filed his petition directly with the California Supreme Court (Lodged Doc. 19), which denied it on November 19, 2009, as untimely. (See Petitioner's Exhibits, Appendix IV, at 3.)

**VI.**

Petitioner filed his amended federal habeas corpus petition in this Court on September 21, 2009.[1]  Respondent affirmatively alleges that the Antiterrorism and Effective Death Penalty Act of 1996 [AEDPA] controls the disposition of this case.  The Petition does not appear subject to dismissal as untimely filed, 28 U.S.C. § 2244(d)(1)(A).

**VII.**

To the extent that the present claims are deemed to renew only the claims decided by the California Court of Appeal, and thereafter renewed in the California Supreme Court, they are properly exhausted, 28 U.S.C. § 2254(b)(1); in any event, each lacks merit, 28 U.S.C. § 2254(b)(2).  To the extent that the present claims are deemed to renew only the claims presented on state habeas decided by the Superior Court, and thereafter renewed in the California Court of Appeal, and in the California Supreme Court, they are properly exhausted, 28 U.S.C. § 2254(b)(1); in any event, each lacks merit, 28 U.S.C. § 2254(b)(2).

**VIII.**

Respondent contends that Petitioner's tenth claim is procedurally barred and without merit. Respondent contends that the following Claims and subclaims have not been exhausted and do not present colorable claims under federal law:  Claim III, subclaims E and H; Claim IV,

---

[1] The original petition was filed on March 3, 2009.

1  subclaims A, B, C, E, F, and H; Claim V; Claim VI.  Respondent affirmatively alleges that the

2  petition contains both exhausted and unexhausted claims.  Therefore, it is a mixed petition subject

3  to dismissal.  *Rose v. Lundy*, 455 U.S. 509 (1982).  Nevertheless, this Court may deny the claims

4  because Petitioner fails to raise even a colorable claim under federal law.  *Cassett v. Stewart*, 406

5  F.3d 614, 623-24 (9th Cir. 2005) (holding that an unexhausted claim may be dismissed pursuant

6  to 28 U.S.C. § 2254(b)(2) "when it is perfectly clear that the applicant does not raise even a

7  colorable claim").  Respondent will address each ground for relief separately.

8  **IX.**

9      Respondent denies that Petitioner's constitutional rights were violated on any of the

10  grounds asserted.   For any claim fairly presented in state court, the rejection was objectively

11  reasonable, 28 U.S.C. § 2254(d); *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002); *Williams v.*

12  *Taylor*, 529 U.S. 362, 412 (2000), and the existence of a constitutional violation, rendering the

13  resulting custody illegal, would not have been "apparent to all reasonable jurists" based on the

14  law extant at the time the conviction became final on direct appeal, *Beard v. Banks*, 542 U.S. 406,

15  413 (2004) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)); *see Teague v. Lane*,

16  489 U.S. 288, 310 (1989).

17  **X.**

18      Respondent denies that Petitioner is entitled to relief on any of his claims.

19  **XI.**

20      Within seven days of the filing of this Answer, Respondent will lodge/file the state court

21  record, which consists of two volumes of Clerk's Transcript (Lodged Doc. 20); one volume of

22  Augmented Clerk's Transcript (Lodged Doc. 21); six volumes of Reporter's Transcript (Lodged

23  Doc. 22); the state appellate briefing (Lodged Docs. 1-5); the state petitions for writ of habeas

24  corpus (Lodged Docs. 9, 10, 12, 14, 17, 19); and the decisions of the state courts (Lodged Docs.

25  6, 8, 11, 16, 18).[2]

26        [2] Collateral parts of the state court record, e.g. miscellaneous correspondence, will be
omitted.  These items are unnecessary for the Court's determination of the instant Petition.  *See*

27  Rules Governing Section 2254 Cases in the United States District Courts, Rule 5(c).  Respondent
also omits copies of documents already attached to the amended Petition, unless included as a

28                                                         (continued…)

3

1  WHEREFORE, Respondent respectfully requests that petition for writ of habeas corpus be

2  denied.

3  Dated:  September 13, 2010                     Respectfully Submitted,

4                                                 EDMUND G. BROWN JR.
                                                   Attorney General of California
5                                                 STEPHEN G. HERNDON
                                                   Supervising Deputy Attorney General
6
7                                                 /s/ *Melissa Lipon*

8                                                 MELISSA LIPON
                                                   Deputy Attorney General
                                                   *Attorneys for Respondent*
9

10              **MEMORANDUM OF POINTS AND AUTHORITIES**

11                          **PROCEDURAL SUMMARY**

12       A jury convicted Petitioner of first-degree murder committed by means of discharging a

13  firearm from a motor vehicle at persons outside the motor vehicle with the intent to inflict death

14  (Count I; Cal. Penal Code §§ 187(a), 190.2(a)(21)), premeditated attempted murder (Count II;

15  Cal. Penal Code §§ 664, 187(a)), and unlawful discharge of a firearm from a motor vehicle

16  (Count III; Cal. Penal Code § 12034(d)).  The jury found true as to Counts I and II that Petitioner,

17  as a principal, personally used a firearm in the commission of the offenses (Cal. Penal Code §

18  12022.53(b) & (e)(1)), and also found true as to all counts that the crimes were committed for the

19  benefit of, at the direction of, or in association with a criminal street gang and with the specific

20  intent to promote, further, or assist in criminal conduct by gang members (Cal. Penal Code §

21  186.22(b), (d)).

22       On December 9, 2005, the trial court sentenced Petitioner to an aggregate state prison term

23  of life without the possibility of parole, plus an indeterminate consecutive term of twenty-five

24  years to life, plus twenty years pursuant to the judgment in case number 02F01534.  (Lodged

25  Doc. 6, at 1-2.)

26  _____

27  (…continued)
    courtesy to the Court because the document is otherwise located in a Petitioner's Exhibit that is
28  not organized chronologically and contains multiple unnumbered pages.

                                          4

After briefing by the parties (Lodged Docs. 1-5), the Court of Appeal affirmed Petitioner's conviction and modified his sentence in an unpublished decision on November 30, 2007, in case number C051473 (the "Opinion").  (Lodged Doc. 6.)  On January 8, 2008, Petitioner filed a Petition for Review in the Supreme Court of California.  (Lodged Doc. 7.)  On March 12, 2008, the California Supreme Court denied the Petition for Review without comment.  (Lodged Doc. 8.)

On January 6, and January 22, 2009, Petitioner filed petitions for writ of habeas corpus in the Superior Court, case numbers 09F00415 and 09F00819, asserting the majority of claims he now raises on federal habeas.  (Lodged Docs. 9, 10.)  The petitions were consolidated and the Superior Court issued a denial in a reasoned decision on March 2, 2009.  (Lodged Doc. 11.)

On April 13, 2009, Petitioner raised the same claims in a petition for writ of habeas corpus filed in the Court of Appeal in case number C061573, which denied the petition without comment on April 20, 2009.  (Lodged Docs. 12, 13; *see also* Petitioner's Exhibits, Appendix IV.)   On June 24, 2009, Petitioner filed his petition with the California Supreme Court, which denied it without comment on November 19, 2009.  (Lodged Doc. 14; *see also* Petitioner's Exhibits, Appendix IV, at 3, 4.)

On August 24, 2009, Petitioner filed a second petition for writ of habeas corpus with the Court of Appeal raising the following two claims:  that a life sentence with the possibility of parole is cruel and unusual punishment, and that the Court of Appeal violated his federal right to due process because it did not remand the matter to the trial court for resentencing.  (Lodged Doc. 15.)  On August 27, 2009, the Court of Appeal denied his claim stating that he must first file the petition in the Superior Court.  (Lodged Doc. 16.)

On September 8, 2009, Petitioner raised the same two claims in the Superior Court (Lodged Doc. 17), which denied the petition as successive and untimely, otherwise procedurally barred, and also found the claims to be without merit.  (Lodged Doc. 18.)   Petitioner then filed his petition directly with the California Supreme Court (Lodged Doc. 19), which denied it on November 19, 2009, as untimely with a citation to *In re Clark*, 5 Cal.4th 750 (1993) (Petitioner's Exhibits, Appendix IV).

1    Petitioner petitioned the California Supreme Court for review on June 24, 2009 and on

2    August 28, 2009.  (Lodged Doc. 19.)  Review was denied without comment as to both petitions

3    on November 19, 2009.  (Lodged Doc. 20.)

4    Petitioner filed an amended federal habeas corpus petition with this Court on September 21,

5    2009.

6                                   **FACTUAL SUMMARY**

7    The Opinion[3] recited the facts as follows:

8      This case arises from a drive-by shooting involving rival Hmong gangs.  Defendants
     Her and Lao were members or affiliates of the gang "Masters of Destruction" or

9    "Menace of Destruction," better known by the acronym MOD.

10     On February 3, 2002, Her and Lao attended a Super Bowl party at Xang Thao's
     home in Meadowview.  After the game, they departed with several MOD members in

11   a minivan driven by Her's cousin, Rindy Her (Rindy).

12     Fifteen miles away, on the north side of town, a Toyota Camry was stolen.  At 8:33
     p.m. that same evening the stolen Camry drove past an apartment building at 3212

13   Western Avenue in Sacramento (3212 Western) and fired weapons at Fong Vue, Vue
     Heu and Yee Xiong, who were standing in front of the driveway.  Heu and Xiong

14   were both affiliated with MOD's chief rival, the Hmong Nation Society or HNS.
     MOD claims its territory in South Sacramento neighborhoods such as Meadowview,

15   Valley Hi and Oak Park.  HNS claims the northern part of the city for its territory,
     including Western Avenue, where the shooting occurred.  Fong Vue died a few days

16   later as a result of shotgun wounds to the head.  Xiong suffered head injuries, but
     survived the attack.  Xiong tentatively identified Lao as one of the shooters inside the

17   Camry.

18     Police found shotgun pellets around Fong Vue's body.  Bullets and fragments from
     one or more handguns were also found around the driveway.  Spent .45-caliber

19   casings were found on the grass between 3212 Western and the adjacent building.

20     There was evidence that the targeted victims who were standing in front of 3212
     Western had returned the gunfire.  Although he denied shooting a firearm himself,

21   residue tests on victim Xiong's hands indicated he had recently fired a gun.  The rear
     window of the Camry was shattered by a bullet that the People's forensic expert

22   determined was likely fired from outside the vehicle and which exited through the
     front windshield.  There were also bullet marks in the rear bumper and spare tire.

23

24     Within minutes of the shooting, Police Officer Warren Estrada spotted the Camry
     making an illegal turn, near Fifth and G Streets in West Sacramento.  When he pulled

25   the Camry over, it initially came to a stop, then led Estrada on a high-speed chase
     through the adjacent neighborhood.  At Second and E, three Asian males jumped out

26   of the car and took off running in different directions.  Estrada, now on foot, followed
     one of the fleeing suspects, who came to an embankment, leaped into the river and

27   _____
            [3] For this Court's convenience, the text is also available at 2007 Cal. App. Unpub. LEXIS

28   9674.

                                           6

began swimming. Estrada jumped in after him, and eventually pulled Lao, who had tired in the current, out of the water.  In his wallet, Lao was carrying a piece of paper with the word "MOD" written on it.

Inside the Camry, police found 12-gauge shotgun casings as well as .32-caliber casings.  On the floorboard in the back seat was a blue bandana with a fluid stain that was matched to Her's DNA.  A blue jacket, later identified as one worn by Her, was found in the back seat of the car.  Inside the jacket was a cell phone.  The phone rang from a caller identified on the screen as "Xang."  Sergeant James Duncan answered, "Where are you at?"  The caller responded that they were at the end of the bridge in Old Sacramento, that there were "hella cops around," and that he should meet them on the other side of the bridge.

Using this information, officers went to Old Sacramento and detained defendant Her's cousin Rindy, John Her, Xang Thao and others, who were standing around Rindy's minivan with Xang's cell phone.

Rindy testified that he and his companions were playing pool after the Super Bowl, when they received a call from Her telling Rindy to pick him up at the Money Store. During the call, Rindy heard Lao's voice in the background, saying, "Hurry up."  The group tried to get to the Money Store, but West Sacramento was inundated with police, so they drove across the bridge into Old Sacramento, where they were arrested.

At 3:00 a.m. the next morning a street sweeper working in West Sacramento recovered a .380-millimeter Beretta semiautomatic pistol and a .32-caliber Colt semiautomatic pistol lying on the side of the road north of E Street.  Officers searching the area where the police chase occurred found a 12-gauge shotgun with a pistol grip near F and Second Streets in West Sacramento.

Police later found three unexpended shotgun shells in Lao's closet that were of the same brand as the shells found in the Camry.  Lao's fingerprint was lifted from a passenger door of the Camry.

Her's girlfriend, Brenda Ly, testified that Her represented himself to be a member of MOD.  Somewhere between 9:00 and 10:00 o'clock on the evening of the shooting, Ly received a call from Her, telling her to pick him up at a pay phone booth in West Sacramento.  Ly complied.  On the way back to her house, Ly noticed that many police cars and helicopters were in the area and asked Her if he knew anything about it.  He answered, "No," but then added, "I didn't want to tell you because I [would] rather have you not know."

Ly and Her slept together that night.  Between 10:48 p.m. on February 3 and 2:53 the next morning, about 60 phone calls were made from Ly's cell phone, including some to Minnesota.  Ly admitted that she only made "a few" of these calls.

Shortly before 11:00 p.m. on February 3, a series of calls was made to the cell phone of Xang Thao, who was then in police custody.  Officer Corey Johnson answered the phone, and a male voice with an Asian accent at the other end repeatedly asked for Xang.  Johnson kept telling the caller that Xang was busy. The caller became enraged, referred to himself as "Sac High MOD," and threatened to "kick" Johnson's "f'ing ass" if he did not let him speak to Xang.  While most of the calls came from blocked numbers, the last one, at 10:45 p.m., was from a caller identified on the screen as "Brenda" and in fact came from Ly's cell phone.

7

The day after the shooting, Her traveled to Minnesota.  Her, who was 15 years old, told his girlfriend he was on a "business trip."  While he was in Minnesota, he asked Ly to get him the address for Lao, who was by then incarcerated.  In April 2002, Ly sent $220 to Her addressed to "John" Her in Minnesota.  In July 2002, Her was arrested in Minnesota and transported back to California.

Detective Aaron Lee testified as an expert on Asian gangs.  MOD is the largest Hmong gang in Sacramento.  MOD members commit car thefts, homicides, drive-by shootings, robberies and other violent crimes.  There is a history of animosity between MOD and its northern rival, HNS.  Younger brothers, cousins or relatives of MOD gang members tend to join smaller groups.  One of these groups is the Youth Mafia Society, or YMS.  After explaining the various factors that go into validating a youth as a gang member, Lee testified that defendant Her has been a validated member of YMS since the year 2000.  Defendant Lao is a validated member of MOD, as letters he wrote from jail bear out his affiliation.

Detective Lee described several incidents exemplifying the enduring rivalry and hostility between the MOD's and HNS gang.  He told the jury that a gang member who participates in a drive-by shooting enhances his reputation within the gang and sends a message to the community to fear and respect the gang.  Gang members do not normally tread into the territory of their rivals.  Presented with a hypothetical drawn from the evidence in this case, Lee opined that a drive-by shooting committed in well-known HNS territory by three MOD members was committed for the benefit of the MOD street gang.

(Lodged Doc. 6, at 2-7.)

After issuance of the California Court of Appeal Opinion, Petitioner did not seek rehearing on the ground that any facts or issues were omitted or misstated in the opinion.  California law is clear that, as to any Petition for Review, the California Supreme Court therefore would consider only the facts and issues stated in that opinion.[4]  Thus, the exhausted claims are those dependent upon the facts as stated above.[5]

---

[4] Cal.R.Ct. 28(c)(2) (Thomson West 2005 rev.) ("A party may petition for review without petitioning for rehearing in the Court of Appeal, but as a policy matter the Supreme Court normally will accept the Court of Appeal opinion's statement of the issues and facts unless the party has called the Court of Appeal's attention to any alleged omission or misstatement of an issue or fact in a petition for rehearing").

[5] A "claim" is (1) an assertion of historical facts, coupled with (2) an argument as to what legal conclusions and consequences follow from those historical facts.  In other words, there is no such thing as exhausting a "claim" without exhausting the "facts."  *See Mayle v. Felix,* 545 U.S. 644, 655 (2005) (observing that notice pleading is unacceptable in habeas cases).  Because the California Supreme Court would not normally consider the merits of a claim on a differing factual basis, the present claims by Petitioner are exhausted only insofar as they proceed on the same factual basis as appears in the Court of Appeal's Opinion.  *See Castille v. Peoples,* 489 U.S. 346, 349, 351 (1989) (when claim is proffered "in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor,'" such proffer "does not, . . . constitute 'fair presentation'"); *Roettgen v. Copeland,* 33 F.3d 36, 38 (9th Cir. 1994).

**GOVERNING AEDPA STANDARDS**

A petition for writ of habeas corpus must be denied absent affirmative proof the state-court merits denial either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). *See Williams*, 529 U.S. at 412; *id.* (§ 2254(d)(1)'s language "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision").[6]  This determination inquires "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-10.[7]

This statutory bar applies even if a federal court believes the state court decision was "clear error." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  No "awareness" of Supreme Court precedent need appear, but only that "neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 11 (2002).

A petitioner must affirmatively show he is not precluded from relief. *See Woodford*, 537 U.S. at 25.  Necessarily, then, if there were multiple possible paths a state court could have taken leading to rejection of a petitioner's claim, it is not the burden of the state to prove affirmatively that the path that the state court actually took was among the reasonable ones–that is already presumed.  In other words, the federal habeas court must give the state court decision every "benefit of the doubt," consistent with the presumption that the state court acted properly by

---

[6] "Under AEDPA we must look to the *direct* precedent of the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  Although lower federal court and state court precedent may be relevant *when* that precedent illuminates the application of clearly established federal law as determined by the United States Supreme Court, if it does not do so, it is of no moment." *Casey v. Moore,* 386 F.3d 896, 907 (9th Cir. 2004) (italics added); *see Crater v. Galaza,* 491 F.3d 1119, 1126 n.8 (9th Cir. 2007).

[7] *Cf. Hawkins v. Alabama,* 318 F.3d 1302, 1306 n.3 (11th Cir. 2003) ("if an objectively reasonable judge could believe a fact which was dispositive in the Supreme Court's rule-of-law-making decisions is absent from the state case, the state court is not obliged to extend–or put differently to widen or enlarge–the Supreme Court's rule to reach the new and substantially different circumstances presented in the state case").

denying the claim.[8]  Thus, it is the obligation of the prisoner to affirmatively disprove the possibility that the state court's actual path to rejection was among the unreasonable paths.

By the statute's terms, section 2254 subdivision (d)'s absolute bar does not apply if the state court decision was affirmatively premised on an unreasonable application of clearly established Supreme Court precedent, or on an unreasonable interpretation of the state court evidence.  But, even without that bar, the statute compels a "presumption," rebuttable only by "clear and convincing evidence," that any "determination of a factual issue made by a State court" was "correct."  28 U.S.C. § 2254(e).

Finally, as to each claim, no relief may be granted unless the existence of a constitutional violation, rendering the resulting custody illegal, would have been "apparent to all reasonable jurists" based on the law extant at the time the conviction became final on direct appeal.  *Beard*, 542 U.S. at 413 (quoting *Lambrix*, 520 U.S. at 527-28); *see Teague*, 489 U.S. at 310.

## ARGUMENT

I.  **BECAUSE THE COURT OF APPEAL'S DECISION, FINDING SUFFICIENT EVIDENCE OF MURDER AND ATTEMPTED MURDER, REASONABLY APPLIED THE RELEVANT LAW TO THE FACTS, PETITIONER'S CLAIM OF INSUFFICIENT EVIDENCE SHOULD BE DENIED**

In his first claim, Petitioner alleges that "his right to a fair trial, due process, equal protection, were violated and prejudice occurred against the 5th, 6th and 14th Amendments of the U.S. Constitution."  (Pet. at 12.)  Petitioner's raised a substantially similar sufficiency of the evidence argument on direct appeal.  (Lodged Doc. 1, at 14-18.)  The Court of Appeal rejected his claim in a reasoned decision.  (Lodged Doc. 6, at 8-10.)  The state court's decision should not be disturbed.

---

[8] It is presumed a state court properly performs judicial duties. *Bracy v. Gramley,* 520 U.S. 899, 909 (1997) ("Ordinarily, we presume that public officials have properly discharged their official duties") (internal quotation marks omitted); *see Wainwright v. Witt,* 469 U.S. 412, 431 (1984) ("where the record does not indicate the standard applied by a state trial judge, he is presumed to have applied the correct one"); *Holland v. Jackson,* 542 U.S. 649, 655 (2004) (noting "'presumption that state courts know and follow the law'" and finding "§ 2254(d)'s 'highly deferential standard for evaluating state-court rulings'" is a standard that "demands that state-court decisions be given the benefit of the doubt").

1    Petitioner also presented this claim in habeas petitions filed with the trial court, the Court of

2    Appeal, and the California Supreme Court.  (Lodged Docs. 9, 10, 12.)  On March 2, 2009, the

3    trial court rejected this claim citing *In re Waltreus*, 62 Cal. 2d 218 (Cal. 1965), reaffirmed in *In re*

4    *Harris*, 5 Cal. 4th 813, 829 (Cal. 1993).  (Lodged Doc. 11, at 1-2.)  The Court of Appeal and

5    California Supreme Court denied the state habeas petitions without comment.  This Court "looks

6    through" to the last reasoned state court decision on the merits.[9]  *Avila v. Galaza*, 297 F.3d 911,

7    918 (9th Cir. 2002) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

8    The Court of Appeal resolved Petitioner's claim as follows:

9
10   Her contends there was "no direct or circumstantial evidence" of his participation in
     the drive-by shooting at 3212 Western, and subsequent death of Fong Vue.  He argues
     that the evidence shows, at most, that he was present at the scene of the crime and
11   failed to prevent it—evidence not sufficient to convict him beyond a reasonable doubt
     of first degree murder. We disagree.

12   When confronted with a claim that the evidence is insufficient to support the
     verdict, the reviewing court examines the record to determine "'whether it shows
13   evidence that is reasonable, credible and of solid value from which a rational trier of
     fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] Further,
14   'the appellate court presumes in support of the judgment the existence of every fact
     the trier could reasonably deduce from the evidence.' [Citation.] This standard applies
15   whether direct or circumstantial evidence is involved." (*People v. Catlin* (2001) 26
     Cal.4th 81, 139.)
16
     In reviewing the sufficiency of the evidence, the well-established test for review, "is
17   whether there is substantial evidence to support the conclusion of the trier of facts,
     not whether the evidence proves guilt beyond a reasonable doubt." (*People v.*
18   *Wheeler* (1977) 71 Cal.App.3d 902, 906, citing *People v. Reyes* (1974) 12 Cal.3d 486,
     497.)
19
     Viewing the record in the light most favorable to the People, we find substantial
20   evidence to support the jury's determination that defendant Her was one of the
     perpetrators of the drive-by shooting at 3212 Western.
21
     The evidence showed that the shooting was committed by the occupants of a Camry,
22   who stole it in the northern part of Sacramento and drove it to 3212 Western, where
     the shooting occurred.  The perpetrators then fled to West Sacramento, where they
23   abandoned the Camry following a high-speed police chase.  The pursuing officer
     observed three Asian males exit the car, and forensic evidence showed that three
24   different firearms (two handguns and a shotgun) were fired from the Camry.

25   _____

26        [9] *Waltreus*, discussed at length in *Harris*, stands for the proposition that habeas corpus
     cannot be used as a second appeal.  *Harris*, 5 Cal. 4th at 825-42.  The Ninth Circuit does not
27   accept a citation to *Waltreus* as imposing a procedural default.  *See Hill v. Roe*, 298 F.3d 796 (9th
     Cir. 2002) (the prohibition against or ineligibility for further review is not a default), amended
     321 F.3d 787, 789 (9th Cir. 2003); *LaCrosse v. Kernan*, 244 F.3d 702, 704 n.11 (9th Cir. 2001).

28

1    Lao was undoubtedly one of the shooters, based on his identification by the
     surviving victim, his aquatic capture after fleeing from the Camry, the shotgun shells
2    found in his closet, and his fingerprint found on the door of the Camry.

3    Her and Lao were both affiliated with the MOD street gang and Her was a validated
     member of YMS, a junior version of MOD.  Her also attended the Super Bowl party
4    where Lao and other MOD gang members were present.  Soon after a group of them
     left the party, the Camry was stolen.  The drive-by shooting occurred a short time
5    later, in the same area.

6    Immediately after the shooting, law enforcement personnel and police helicopters
     surrounded the Money Store/Tower Bridge/Old Sacramento area.  During the same
7    time frame, Her called his cousin Rindy, asking to be picked up from the Money
     Store.  Lao's voice could be heard in the background.  Her's jacket and a bandana
8    with fluids containing his DNA were found in the Camry.  There was strong
     circumstantial evidence that Her used his girlfriend Brenda Ly's phone to call Xang
9    Thao's phone, which was in possession of the police.  The caller identified himself as
     a MOD gang member.
10
     When Ly picked Her up in West Sacramento around 10:30 p.m. that night, she
11   asked him whether he had anything to do with the police cars and helicopters in the
     area.  His reply, that he did not want to tell her because he preferred that she not
12   know, was a statement from which the jury could infer consciousness of guilt.

13   Circumstantial evidence established that Her made numerous calls from Ly's cell
     phone in the early hours of the next morning, including some to Minnesota.  The day
14   after the shooting, Her fled to Minnesota, where Ly eventually sent him money.

15   Based on the above evidence, a reasonable jury could find that Her was one of the
     three assailants who committed the drive-by shooting at 3212 Western that resulted in
16   Fong Vue's death.  Because the evidence was sufficient to find that Her was a direct
     perpetrator, we need not discuss his related contention that the evidence was
17   insufficient to find him guilty as an accomplice.

18   (Lodged Doc. 6, at 8-10.)

19   On federal habeas, Petitioner reconstitutes the claim he advanced on direct appeal that the

20   prosecution failed to present "direct or circumstantial evidence" of his participation in the

21   shooting.  (Pet. at 11.)  His conclusory claim does not succeed in carrying his "heavy burden" of

22   showing insufficient evidence on habeas, *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

23   California courts review claims of insufficient evidence using the standard enunciated in

24   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See People v. Cuevas*, 12 Cal. 4th 252, 260-61

25   (Cal. 1995); *People v. Johnson*, 26 Cal. 3d 557, 578 (Cal. 1980).  Under the AEDPA, a writ of

26   habeas corpus may be issued on the grounds of insufficient evidence only if the state courts

27   unreasonably applied the standard of *Jackson*.  *McDaniel v. Brown*, 130 S.Ct. 665, 672 (2010);

28   *see Williams*, 529 U.S. at 412-13.  Deference to the relevant state court factual findings is now

12

required.  *See Jeffries v. Wood*, 114 F.3d 1484, 1498 (9th Cir. 1997); *see also Hughes v. Johnson*, 191 F.3d 607, 619-20 (5th Cir. 1999); *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998).  The Ninth Circuit recognizes that the AEDPA requires a reviewing federal court to "apply the standards of *Jackson* with an additional layer of deference."  *Juan H.*, 408 F.3d at 1274.  Accordingly, "[a] petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  *Id*.

In the instant case, the state Court of Appeal reviewed the evidence under the proper standard and found "substantial evidence to support the jury's determination that defendant Her was one of the perpetrators of the drive-by shooting at 3212 Western."  (Lodged. Doc. 6, at 9.)  No more was required.  The Court of Appeal's interpretation of the trial record differs from Petitioner's interpretation.  (Pet. at 11-12.)  However, Petitioner fails to address the relevant standard on collateral review, much less to demonstrate that the Court of Appeal's rejection of his claim was unreasonable in light of the evidence presented at trial, or contrary to *Jackson*, or that the court unreasonably applied *Jackson*.  Therefore, because a rational trier of fact could have found the essential elements of murder and attempted murder beyond a reasonable doubt based on the evidence, *see Jackson*, 443 U.S. at 319, the decision of the Court of Appeals was reasonable and should not be disturbed.

Petitioner has failed to show that the Court of Appeal's decision was contrary to, or involved an unreasonable application of, clearly-established federal law.  Accordingly, his claim should be denied.

## II.   THE COURT OF APPEAL'S FINDING OF SUFFICIENT EVIDENCE TO SUSTAIN THE FIREARM AND GANG ENHANCEMENTS WAS NOT CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, CLEARLY-ESTABLISHED UNITED STATES SUPREME COURT PRECEDENT

In his second claim, Petitioner challenges the jury's true findings as to the firearm enhancements were unsupported by sufficient evidence because the prosecution failed to show that he had "the requisite mens rea or that the killing was 'unjustified.'"  (Pet. at 16.)  Petitioner further asserts that the gang allegation applied to his convictions rested on insufficient evidence.

13

1   (Pet. at 16.)  Petitioner raised substantially similar claims of insufficient evidence on direct

2   appeal, which were rejected by the Court of Appeal after finding that a "reasonable trier of fact

3   could find that all three occupants of the car personally discharged a firearm while driving past

4   3212 Western," and that these crimes were committed in furtherance of the objectives of a

5   criminal street gang.  (Lodged Doc. 6, at 11 [italics as in original].)  The California Supreme

6   Court denied review without comment.

7       Petitioner also presented these claims in habeas petitions filed at each level of review.

8   (Lodged Docs. 9, 10, 12), in which the last reasoned decision denied the claims citing *Waltreus*,

9   62 Cal. 2d 218.  (Lodged Doc. 11, at 1-2.)  Therefore, the state Court of Appeal's decision is the

10  last reasoned decision on the merits of the claim.  *Avila*, 297 F.3d at 918 (citing *Ylst*, 501 U.S. at

11  803-04).

12      **A.    Sufficiency Of The Evidence As To Firearm Enhancements**

13      The Court of Appeal rejected Petitioner's claim as follows:

14       For the reasons advanced in the previous argument, Her contends the special firearm
         findings were devoid of substantial evidence in the record and should be stricken,
15       since there was no evidence he personally discharged a firearm in the commission of
         the offense.
16
         We reject the argument for the reasons we have just stated.  Two handguns and a
17       shotgun were abandoned in the same area of West Sacramento where the stolen
         Camry led Officer Estrada on a high-speed chase only a few hours earlier.  Hence, the
18       trier of fact could find that all three occupants of the car personally discharged a
         firearm while driving past 3212 Western.
19

20  (Lodged Doc. 6, at 11.)

21      Petitioner grounds this claim in his belief that the prosecution failed to present any "direct

22  or circumstantial evidence" of his participation in the shooting.  (Pet. at 11.)  Again, Petitioner's

23  conclusory statement has not met his heavy burden of showing that the conviction was based on

24  insufficient evidence.  Here, the state Court of Appeal reviewed the evidence utilizing the proper

25  standard and concluded that "the trier of fact could find that all three occupants of the car

26  personally discharged a firearm while driving past 3212 Western."  (Lodged Doc. 6, at 11.)

27  Petitioner fails to acknowledge, much less rebut, the state court's conclusion that the evidence

28  presented at trial strongly suggested that Petitioner was one of three occupants in a stolen vehicle

                                            14

1   from which three firearms were discharged during a drive-by shooting in rival gang territory.

2   (*Ibid.*)  Petitioner's differing view of the evidence presented at trial does not come close to

3   meeting his burden on a claim of insufficient evidence under federal habeas.  In short, Petitioner

4   fails to explain how the evidence supporting the firearm enhancement was insufficient.  Because a

5   rational trier of fact could have found that Petitioner was one of three people who discharged

6   three firearms during the shooting, *see Jackson*, 443 U.S. at 319, the decision of the Court of

7   Appeals was objectively reasonable.

8       **B.**    **Sufficiency Of The Evidence As To The Gang Enhancements**

9       In subclaim B, Petitioner contends that substantial evidence does not support the jury's

10  finding true the gang enhancements.  (Pet. at 17-23.)

11      The Court of Appeal rejected Petitioner's argument as follows:

12      Her contends that the evidence was insufficient to support the jury's finding that the
13  shooting was committed to further criminal conduct by gang members within the
    meaning of section 186.22.

14      Section 186.22, subdivision (b)(1) provides an enhancement punishment for any
15  crime that has been committed "for the benefit of, at the direction of, or in association
    with [a] criminal street gang," and with specific intent "to promote, further, or assist .
16  . . criminal conduct by gang members."

17      There was no shortage of evidence that this crime was the direct result of hostilities
    between the MOD gang, to which Her belonged, and the HNS gang, with which two
18  of the targeted victims were affiliated.

19      There was also evidence that Her and his MOD companions stole a car and traveled
    to a known HNS neighborhood, where they committed the drive-by shooting
20  targeting HNS members.  As the People's gang expert, Detective Lee, explained,
    "reputation is everything in the gang subculture."  A drive-by shooting in the territory
21  of a rival gang sends a powerful message to the community that MOD is composed of
    hard-core killers and therefore the community should fear and respect them.
22  Presented with a hypothetical based on the facts of this case, Lee opined that the
    shooting would "definitely" benefit the MOD criminal street gang.  "A drive-by
23  shooting is a classic gang case. Drive-by shootings are synonymous with gangs. . . .
    [¶]  You know, this drive-by shooting, these circumstances which you have  given me
24  here, it sends a clear message to all of MOD's enemies that, hey, if you mess with us,
    you're gonna pay the consequences."  "The use of expert testimony in the area of gang
25  sociology and psychology is well established."  (*People v. Olguin* (1994) 31
    Cal.App.4th 1355, 1370 (*Olguin*).)

26      We conclude the trier of fact could reasonably find the crime was committed for the
    benefit of a street gang. (See *People v. Duran* (2002) 97 Cal.App.4th 1448, 1465;
27  *Olguin, supra*, 31 Cal.App.4th at pp. 1382-1383.)

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        While not contesting evidence that he was a validated member of YMS, Her claims that the gang enhancement finding was unsupported because the prosecution failed to prove that YMS was a criminal street gang within the meaning of the statute, i.e., an "ongoing organization, association or group of three or more persons" sharing a common name or common identifying sign or symbol, that has as one of its "primary activities" the commission of specified criminal offenses; and engages through its members in a "pattern of criminal gang activity." (§ 186.22, subd. (f); see *People v. Gardeley* (1996) 14 Cal.4th 605, 610 (*Gardeley*).)

        Her's argument reads the enhancement statute too narrowly. The enhancement is triggered when the crime is "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1), italics added.) YMS was a junior "wannabe" gang, populated by younger relatives and friends of the MOD's. Detective Lee described a long record of homicides and other violent crimes engaged in by the MOD gang.  Since YMS was a junior street gang operating under the MOD umbrella and Her called himself a MOD, the jury could find that the crime was committed for the benefit of and to promote the criminal activities of the MOD gang, regardless of whether Her himself was a validated member.

        Her's argument that there was insufficient evidence to show that crimes of violence and theft were MOD's "primary activities" borders on the frivolous.  Detective Lee testified extensively as to numerous street crimes engaged in by MOD since the 1990's, including beatings, stabbings, drive-by shootings and car thefts.  The jury was also entitled to consider the present drive-by shooting as evidence of the group's primary activities.  (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) Incontrovertibly, there was substantial evidence that one of MOD's primary activities was the commission of gang crimes enumerated within the statute. (§ 186.22, subd. (e); see *Sengpadychith, supra*, at pp. 323-324; *Gardeley, supra*, 14 Cal.4th at p. 620.)

        Finally, we reject the argument that the prosecution failed to show that Her harbored a specific intent to promote criminal activity by gang members.  As stated in *People v. Morales* (2003) 112 Cal.App.4th 1176, "specific intent to benefit the gang is not required.  What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members.'" (*Id.* at p. 1198, italics added.)  The evidence we have recited, that Her knowingly aided members of MOD in committing the drive-by shooting, was sufficient of itself to satisfy the specific intent requirement. (*Ibid.*)

(Lodged Doc. 6, at 11-14.)

        Petitioner's claim fails for several reasons.  First, with the exception of invoking the general

sufficiency standard expressed in *Jackson, supra*, Petitioner bases his arguments exclusively on

California state statutes and cases.  To the extent that he relies on California authority, he fails to

show federal Constitutional error, because a violation of a state law forms "no part" of an inquiry

into whether an act violated the Constitution.  *See Estelle v. McGuire*, 502, U.S. 62, 67 (1991);

1  *see also Beck v. Washington*, 369 U.S. 541, 554-55 (1962); *Little v. Crawford*, 449 F.3d 1075,

2  1082-83 & n.6 (9th Cir. 2006).[10]

3      Second, Petitioner does not succeed in carrying his "heavy burden" of showing insufficient

4  evidence on habeas.  *Juan H.*, 408 F.3d at 1274.  Under the AEDPA, a writ of habeas corpus may

5  be issued on the grounds of insufficient evidence only if the state courts unreasonably applied the

6  standard of *Jackson*, 443 U.S. at 319.  *See Williams*, 529 U.S. at 412-13.  In the instant case, the

7  state Court of Appeal reviewed the evidence under the proper standard and found it sufficient.

8  (Lodged Doc. 6, at 11-14.)  Again, no more was required.  The state appellate court's factual

9  determinations were not unreasonable in light of the evidence presented at trial; nor were they

10  contrary to *Jackson*; nor did the court unreasonably apply *Jackson*.  Even if the prosecution's

11  guilt case were not proved with certainty, *Jackson* itself affirmed that the prosecution has no

12  "affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt."

13  *Jackson*, 443 U.S. at 326.

14      In sum, Petitioner failed to show that Court of Appeal's rejection of these claims was

15  contrary to, or involved an unreasonable application of, clearly established federal law or based

16  on an unreasonable determination of the facts.  Accordingly, the claims fail.

17  **III.  THE STATE COURTS REJECTED PETITIONER'S CLAIMS THAT TRIAL COUNSEL WAS
     INEFFECTIVE, AND THAT DECISION WAS NOT CONTRARY TO, NOR AN**
18  **UNREASONABLE APPLICATION OF, SUPREME COURT PRECEDENT**

19      In his third claim, Petitioner asserts that his trial counsel was ineffective in the following six

20  subclaims:  (A) counsel failed to investigate a witness; (B-1) counsel failed to object to

21      [10] Although Petitioner does not rely on federal cases, two relevant Ninth Circuit opinions
22  discuss the elements of the state gang enhancement statute.  *See Briceno v. Scribner*, 555 F.3d
    1069; *Garcia v. Carey*, 395 F.3d 1099 (9th Cir. 2005).  In *Garcia*, the Ninth Circuit granted the
23  petition for writ of habeas corpus where the expert's testimony was "singularly silent on what
    criminal activity of the gang was furthered or intended to be furthered by the robbery."  *Id.* at
24  1103.  Here, by contrast, the expert's testimony contained just this type of evidence.  (Lodged
    Doc. 6, at 7, 11-14.)  In *Briceno*, the opinion noted that the California Supreme Court has not yet
25  expressed an opinion about whether the district court correctly interpreted the elements in this
    state statute.  *Briceno*, 555 F.3d at 1080 ("the California Supreme Court . . . has yet to address this
26  issue.").  However, there is now a pending case before the state supreme court, *People v. Albillar*,
    S163905, that presents the issue of whether there was sufficient evidence to support the jury's
27  gang enhancement finding.  The Ninth Circuit has also certified questions, to the California
    Supreme Court regarding proper interpretation of California's criminal street gang enhancement
28  statute.  *Emery v. Clark*, 604 F.3d 1102 (9th Cir. 2010).

1   prosecutor's statement during closing argument; (B-2) counsel made ineffective arguments during

2   closing; (C) counsel failed to object to the gang expert's opinion; (D) counsel failed to call an

3   expert witness on Petitioner's behalf; and (E) counsel failed to inquire into a prosecution

4   witness's communication with a juror.[11]  (Pet. at 23-28.)

5          Petitioner presented an identical claim in habeas petitions filed with the trial court, the

6   Court of Appeal, and the California Supreme Court.  (Lodged Docs. 9, 10, 12.)  On March 2,

7   2009, the Superior Court rejected Petitioner's subclaims in a reasoned decision.  (Lodged Doc.

8   11.)  This Court reviews the Superior Court's determination of the federal issue because it is the

9   last reasoned decision in the case.  *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir.

10  2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the

11  summary disposition to the last reasoned decision).

12         As an initial matter, all of Petitioner's claims must fail because he does not acknowledge

13  the state court's rejection, much less show that the decision of the state court was contrary to, or

14  involved an unreasonable application of, clearly established federal law, or was based on an

15  unreasonable determination of the facts.  He has therefore failed to meet his burden under 28

16  U.S.C. § 2254(d).  Furthermore, Petitioner's subclaims of ineffective assistance are almost

17  entirely unsupported by relevant citations to the record or legal authority.  Finally, the state

18  court's resolution of each of his ineffective assistance subclaims was not contrary to or an

19  unreasonable application of Supreme Court precedent.

20     **A.   Legal Standards**

21         To succeed on a claim of ineffective assistance of counsel, Petitioner must demonstrate (1)

22  that counsel's performance and assistance was deficient, or "fell below an objective standard of

23  reasonableness" of "prevailing professional norms," and (2) that counsel's performance

24  prejudiced petitioner's defense.  *Strickland v. Washington*, 466 U.S. 668, 687-92 (1984).

25  Counsel's performance is deficient if "counsel made errors so serious that counsel was not

26  functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  In

27         [11] Respondent will address subclaim E separately because the same operative facts relate

28  to several other claims raised in the petition.

18

1  determining whether counsel's performance is constitutionally deficient, courts "indulge a strong

2  presumption that counsel's conduct falls within the wide range of reasonable professional

3  assistance . . . ." *Id.* at 689.  The Ninth Circuit has cautioned that,

4  > [i]n evaluating the reasonableness of counsel's actions, a reviewing court must
   > consider the circumstances at the time of counsel's conduct, *Strickland*, 466 U.S. at
5  > 690, and cannot "second-guess" counsel's decisions or view them under the "fabled
   > twenty-twenty vision of hindsight," *LaGrand v. Stewart*, 133 F.3d 1253, 1271 (9th
6  > Cir. 1998) (internal quotation marks omitted).

7  *Edwards v. Lamarque*, 475 F.3d 1121, 1127 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 532 (2007).

8  To demonstrate prejudice, a petitioner must show a "reasonable probability that, but for counsel's

9  unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

10  U.S. at 694.  If either prong of this test is not satisfied, the court must find that counsel's

11  performance was constitutionally effective.  *See id.* at 697.

12  Petitioner must identify the acts or omissions of counsel that are alleged not to be the result

13  of reasonable professional judgment.  *Strickland, supra*, 466 U.S. at p. 690.  Petitioner bears a

14  heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound

15  trial strategy.  *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).  Conclusory allegations

16  not supported by specifics do not warrant relief.  *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir.

17  1995); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *United States v. Popoola*, 881 F.2d  811,

18  813 (9th Cir. 1989).  Vague and speculative assertions are deficient.  *United States v. Taylor*, 802

19  F.2d 1108, 1119 (9th Cir. 1986), citing *United States v. Rogers*, 769 F.2d 1418, 1425 (9th Cir.

20  1985).  In order to succeed on an ineffective assistance claim, a petitioner must make a sufficient

21  factual showing to substantiate the claims.  *United States  v. Schaflander*, 743 F.2d 714, 721 (9th

22  Cir. 1984).

23  **B.    Failure To Investigate Potential Defense Witness Vang**

24  In subclaim A, Petitioner asserts that his counsel was constitutionally ineffective for failing

25  to investigate a potential defense witness named "Vang."  (Pet. at 23-24.)  The state courts'

26  rejection of this claim was entirely reasonable.

27  The Superior Court resolved Petitioner's claim as follows:

28

1

2

3

4

5

> Petitioner next claims that defense trial counsel was ineffective in fully investigating a witness named Vang who purportedly had told a cousin of Michael Camacho that Vang had witnessed the shooting and had seen petitioner in a white vehicle and not in the blue Toyota Camry.  Petitioner, however, fails to now present Vang as a witness and show through affidavit that Vang would have testified, had he been called, [or] that petitioner was not in the car involved in the drive-by shooting. Without such an affidavit, petitioner's claim, based on multiple levels of hearsay only, fails.  Nor does petititioner show that the error was prejudicial, as the evidence against him and that he was in fact present in the car from which the shots were fired was strong.

6

(Lodged Doc. 11, at 4.)

7

8

Petitioner has not attempted to show that the state court's denial of this claim was contrary

to clearly-established federal law or based upon an unreasonable determination of the facts.

9

10

Furthermore, the record demonstrates that Petitioner could not make such a showing.  Claims of

failure to investigate must show what information would be obtained with investigation, and

11

12

whether, assuming the evidence is admissible, it would have produced a different result.  *See*

*Hamilton v. Vasquez*, 17 F.3d 1149, 1157 (9th Cir. 1994); *Wade v. Calderon*, 29 F.3d 1312, 1316-

13

14

17 (9th Cir. 1994); *Popoola*, 881 F.2d at 813; *see also Nelson v. Hargett*, 989 F.2d 847, 850 (5th

Cir. 1993); *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1010-11 (7th Cir. 1987).

15

16

Claims of failure to interview or to call witnesses are deficient where there is no showing what

the interview would obtain and how it might change the outcome.  *United States v. Berry*, 814

17

18

F.2d 1406, 1409 (9th Cir. 1987); *see also Hopkinson v. Shillinger*, 866 F.2d 1185, 1211-12 (10th

Cir. 1989); *United States v. Murray*, 751 F. 2d 1528, 1535 (9th Cir. 1985).

19

20

In support of his claim, Petitioner attached a copy of a defense investigator's report

detailing an interview with Petitioner's friend, Michael Camacho, which occurred prior to the

21

22

trial.  (Pet. at 23; citing Petitioner's Exhibits, Appendix III, at 1-2.)  This document shows that, at

Petitioner's request, a defense investigator contacted Michael Camacho, who was serving a

23

24

sentence for felony assault with a deadly weapon, and waiting to be transferred to the State

Department of Corrections.  (Petitioner's Exhibits, Appendix III, at 1-2.)  Camacho claimed that

25

26

he had been housed with another juvenile named Vang who claimed to have witnessed the

shooting on Western Avenue and had observed that the shooters were in a light-colored car or

27

truck, and that he recognized Petitioner in the passenger seat of this car.  (*Id*.)  As the state court

28

20

1    noted, Petitioner fails to meet his burden because his claim is based on multiple hearsay sources

2    without any reasonably available substantiation, such as an affidavit from Vang indicating that he

3    would have testified at trial or the nature of his testimony.  (Lodged Doc. 11, at 4.)  Furthermore,

4    Petitioner does not indicate how the testimony could possibly have produced a different verdict.

5    Petitioner claims, in conformance with his exhibit, that Vang would have testified to observing

6    Petitioner in a white car, rather than a blue Camry during the shooting.  However, he seems to

7    suggest now that there might have been two cars in the area during the shooting.  (Pet. at 23.)

8    This suggestion is not supported by his exhibit or the record.  The shooting was witnessed by

9    several people who testified at trial that they had observed the shooters in a dark-colored car or a

10   Camry.  None of these witnesses testified about a light-colored car in the area at the time of the

11   shooting.  (*See* Lodged Doc. at 22 [Reporter's Transcript, Vols. 1, 2], at 189, 191-192, 232-233,

12   248-249, 254-255, 257, 266, 282, 287, 299, 303, 311.)

13         Finally, this claim necessarily fails on the merits because Petitioner does not demonstrate

14   how Vang's testimony might have altered the verdicts.  Petitioner alludes to his defense

15   throughout the claims presented on federal habeas, namely that the prosecution failed to prove

16   that he was in the car, and even if he were in the car, the prosecution could not show beyond a

17   reasonable doubt that the shooters were the aggressors, rather than acting in self-defense.  (Pet. at

18   13-23, 28, 33.)  A reasonable attorney would hesitate to present a witness who placed his client in

19   any car during a drive-by shooting in rival gang territory which resulted in two people being shot

20   in the head.  Moreover, as the state court noted, the prosecution presented strong evidence that

21   Petitioner was in the recently stolen blue Toyota Camry at the time of the shooting.  This

22   evidence included Petitioner's jacket in the backseat of the car located near a bandanna that had

23   traces of his sweat or saliva, as well as witness testimony and phone records, from which the jury

24   could roughly reconstruct Petitioner's location and activities after he fled the car.

25         In sum, Petitioner's conclusory allegation has failed to show that the decision of the state

26   court was contrary to, or involved an unreasonable application of, clearly established federal law,

27   or was based on an unreasonable determination of the facts.  He has therefore failed to meet his

28   burden under 28 U.S.C. § 2254(d).  Accordingly, his claim should be denied.

### C.   Failure To Object To Gang Expert's Opinion

In his second subclaim, Petitioner asserts that his counsel was ineffective for failing to object to the "prosecution witness' inflammatory characterization of Petitioner during trial." (Pet. at 28.)  Petitioner fails to address the admissibility of the evidence, and furthermore fails to assess prejudice.  (*Id*. at 28-29.)  The state courts' rejection of this claim was entirely reasonable.

The Superior Court resolved Petitioner's claim on state habeas as follows:

> Petitioner next claims that defense trial counsel was ineffective in failing to object to gang expert Lee's opinion that the drive-by shooting was committed for the benefit of the gang, because the hypothetical question was not rooted from the facts shown by the evidence.  Petitioner notes that defense trial counsel's failure resulted in a waiver of the issue on appeal, as determined by the Third District in the appeal.  [¶] Petitioner fails to note, however, that petitioner's girlfriend Ly testified at trial that petitioner represented himself to be a member of the MOD gang, that the expert testified that petitioner had been a validated member of a subset of that gang since 2000, and that other evidence showed that the victims were members of a rival gang and that petitioner and his accomplices had driven into territory well known to be that of the rival gang and committed the drive-by shooting.  These were sufficient facts upon which to base the opinion that the shooting was for the benefit of the gang.  As such, any objection to the opinion would have been denied, had one been made, and defense trial counsel was not ineffective in failing to make the objection (see *Strickland v. Washington* (1984) 466 U.S. 668).

(Lodged Doc. 11, at 5.)

Petitioner's claim fails for several reasons.  First, he bases his argument exclusively on California state statutes and cases.  To the extent that he relies on California authority, he fails to show federal Constitutional error.  *See Estelle*, 502 U.S. at 67; *Little*, 449 F.3d at 1082-83 & n.6.

Moreover, Petitioner makes his ineffectiveness argument without reference to the state court's decision; therefore, he necessarily fails to demonstrate that it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  His claim fails for this reason alone.  In any event, it cannot be said that the state court's rejection of this claim was unreasonable.  Applying *Strickland*, the trial court found that counsel was not deficient for failing to object because the evidence was admissible and there was no possible prejudice.

To prevail on an ineffective assistance claim in the context of failure to object, the complainant must show that the evidence was inadmissible.  *United States v. Bosch*, 914 F.2d

1  1239, 1247 (9th Cir. 1990). Petitioner entirely fails to demonstrate that Lee's testimony was not

2  the proper subject of expert testimony. The Tenth Circuit rejected a similar ineffective assistance

3  claim finding that counsel's failure to object to a pathologist characterizing wounds as

4  "defensive," was not ineffective because the opinion was the proper subject of expert testimony.

5  *Cannon v. Mullin*, 383 F.3d 1152, 1160-65 (10th Cir. 2004). Here, Lee made the disputed

6  comments in the context of explaining that a criminal street gang is a heirarchal structure where a

7  member's status is determined to a great degree by the seriousness of the crimes he commits.

8  Therefore, a member who commits murder will substantially increase his status within the gang.

9  As the state court observed, """The use of expert testimony in the area of gang sociology and

10  psychology is well established."' (Lodged Doc. 6, at 12 (citing *People v. Olguin*, 31 Cal. App.

11  4th 1355, 1370 (Cal. App. 1994).) Therefore, Petitioner cannot demonstrate that Lee's testimony

12  was inadmissible under California law.

13  Furthermore, even if Petitioner could demonstrate that a timely objection would have

14  resulted in exclusion of this testimony, he still assumes prejudice without demonstrating it.

15  Generally, the admissibility of evidence is a matter of state law that is binding on the federal court

16  in the absence of a due process implication; therefore, if evidence is erroneously admitted it

17  constitutes at most harmless error, and no ineffective performance is shown. *Clark v. Groose*, 16

18  F.3d 960, 963-64 (8th Cir. 1994). The Ninth Circuit reached the same result in *LePage v. Idaho*,

19  851 F.2d 251, 257 (9th Cir. 1988), using a prejudice analysis. In *Fry v. Pliler*, 551 U.S. 112, 116

20  (2007), the United States Supreme Court clarified that in federal habeas proceedings, a court must

21  assess the prejudicial impact of constitutional error under the standard of "substantial and

22  injurious effect" on the jury's verdict of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

23  For two major reasons, Petitioner cannot demonstrate that admission of the gang expert's

24  testimony had this effect on his trial's outcome.

25  First, the jury's true finding was supported by substantial evidence independent of the gang

26  expert's testimony. In 2000, Petitioner was validated as member of YMS, a youthful division of a

27  Hmong criminal street gang commonly referred to with the acronym "MOD." The jury also

28  heard undisputed evidence that Petitioner, along with his fellow gang members, including Huoa

23

1  Lao, who was a validated member of MOD, evaded the peace officer pursuing them.  While they

2  were being pursued, Petitioner used Rindy Her's cellular phone to call several other older

3  validated members MOD who were nearby.  Rindy Her testified that Petitioner called requesting

4  help because they were being chased by law enforcement.  He also testified that Petitioner was a

5  member of MOD.  Petitioner's girlfriend, Brenda Ly, testified that he was a member of MOD.

6  The prosecution also presented evidence that within an hour of abandoning the car, Petitioner

7  called Ly's cellular phone from a public payphone located at a gas station downtown and

8  requested that she drive over to get him, which she did.  Shortly thereafter, Petitioner used Ly's

9  cellular phone to call Xang's phone, without knowing that the group of older MOD members,

10  including Rindy and Xang, had been intercepted by police officers.  When a police officer

11  answered Xang's phone, Petitioner identified himself as "Sac High Mod," and threatened to hurt

12  the person on the other end of the phone line if he did not give the phone to Xang.  (Lodged Doc.

13  22 [Reporter's Transcript, Vol. 3], at 769-772, 785].)  Moreover, Petitioner wrote MOD gang

14  symbols on letters he sent to Ly from his hide-out in Minnesota, and he also asked Ly to intercept

15  a letter from him and deliver it to Lao, who was in custody at the time.  (Lodged Doc. 22

16  [Reporter's Transcript, Vol. 3], at 593-599, 603-605.])  Given the evidence of Petitioner's

17  membership in MOD, the jury could have found that he committed the crime with the intent to

18  promote or assist other MOD members in criminal conduct even without Lee's testimony.

19  Indeed, because Petitioner committed the drive-by shooting in concert with Lao, who was

20  undisputably a member of MOD, his conduct necessarily had this effect.  *See People v. Morales*,

21  112 Cal. App. 4th 1176, 1197 (2003) (evidence that defendant "knowingly committed the charged

22  crimes in association with two fellow gang members" sufficient to support the gang

23  enhancement), even without the gang expert's testimony.  Because a reasonable jury could have

24  reached the same conclusion without the expert's opinion, there was no harm in its admission.

25         Second, the trial court gave the jury an instruction limiting and guiding their consideration

26  of the expert's opinion.  (Lodged Doc. 21 [Clerk's Transcript, Vol. 1], at 264.)  There is an

27  "almost invariable assumption of the law that jurors follow their instructions," *Richardson v.*

28  *Marsh*, 481 U.S. 200, 206 (1987), and nothing in the record suggests that the jurors here did

24

1   otherwise.  In light of the court's instructions to the jury, Petitioner cannot show prejudice.  *See*

2   *Brecht*, 507 U.S. at 637-38.

3       In short, the state court rejected Petitioner's claim of ineffective assistance because he

4   failed to demonstrate that a failure to object resulted in the admission of otherwise inadmissible

5   testimony.  Where counsel's alleged ineffectiveness is based upon an alleged violation of state

6   law, a state-court finding of no violation resolves the ineffectiveness claim.

7       Accordingly, this claim fails.

8       **D.**    **Defense Counsel's Closing Argument**

9       In his next subclaim, Petitioner asserts that the jury rejected his self-defense argument

10   because counsel misspoke during closing argument.  (Pet. at 27-28.)   Petitioner presented the

11   same conclusory claim in his habeas petitions filed with state courts.  He fails to demonstrate that

12   the state court's rejection of this claim was objectively unreasonable.

13       The Superior Court resolved Petitioner's claim on state habeas as follows:

14       Petitioner next claims that defense counsel was ineffective in misspeaking during
15       closing argument that the projectile was never "fired," which counsel after a moment
    corrected as being "recovered," and that appellate counsel was ineffective in failing to
16       raise the issue on appeal.

17       Petitioner fails to attach the reporter's transcript evidencing the matter.  Regardless, it
    is clear that counsel misspoke and immediately corrected himself, thereby dissipating
    any prejudice.  The claim simply fails as it had no possibility of being prejudicial and
18       was clearly a harmless mistake.

19   (Lodged Doc. 11, at 3-4.)

20       At the outset, Petitioner's claim fails because he has not attempted to show that the state

21   court's denial of this claim was contrary to clearly-established federal law or based upon an

22   unreasonable determination of the facts.  *See Houston v. Roe*, 177 F.3d 901, 910 (9th Cir. 1999)

23   (summarily rejecting a claim because petitioner failed to allege a purported error violated clearly

24   established federal law).  Second, even if Petitioner had cited governing Supreme Court authority,

25   his assertions of error and prejudice are conclusory, and cannot entitle him to relief.  *See Hall v.*

26   *Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (ruling that even pro se plaintiffs must allege

27   sufficient facts on which a recognized legal claim can be based; conclusory allegations will not

28   suffice); *see also Jones*, 66 F.3d at 204 05 (petitioner's conclusory allegations did not meet the

25

1    specificity requirement); *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported

2    by a statement of specific facts do not warrant habeas relief").

3        Finally, Petitioner could not make a showing of prejudice under the *Brecht* standard.  As

4    the state court here found, a verbal misstep corrected during argument could not have impacted

5    the outcome of the trial in any manner.  (Lodged Doc. 11, at 3-4; *see also United States v. Bari*,

6    750 F.2d 1169, 1183 (2d Cir. 1984) (a "Freudian slip," in which counsel told the jury to find his

7    client guilty, was not incompetence because it did not affect the result; *see also United States v.

8    South*, 28 F.3d 619, 630 (7th Cir. 1994) (no ineffectiveness for a harmless "slip of the tongue");

9    *United States v. Johnson-Wilder*, 29 F.3d 1100, 1105 (7th Cir. 1994) (embarrassing after-the-fact

10   mistakes occurring in the heat of battle do not amount to objectively unreasonable conduct).

11       Accordingly, Petitioner's claim of prejudicial misconduct must fail.

12   **E.    Petitioner's Ineffective Assistance Claim For Failure To Call An Expert**
         **Witness Is Unexhausted, But May Be Denied Because It Is Not Colorable**
13       **Under Federal Law**

14       In his next subclaim, Petitioner asserts that his counsel prejudicially erred in failing to call

15   an expert witness who would testify that a person on Western Avenue discharged a weapon

16   before the occupants of the Camry discharged their weapons.  (Pet. at 28.)  Petitioner's presented

17   the same unsubstantiated claim in his state habeas petition.  The state court rejected all of the

18   claims for a failure to plead with sufficient particularity.  Although this claim is unexhausted, this

19   Court may deny it as not colorable.

20       The Superior Court resolved Petitioner's claim on state habeas as follows:

21        Petitioner next claims that defense trial counsel was ineffective in failing to present
         an expert witness to testify on his behalf.
22

23        Petitioner fails to attach reasonably available documentary evidence such as an
         affidavit from an expert setting forth what testimony the expert would have given at
24       trial that would have been reasonably likely to have made a difference in the outcome
         of the trial.  As such, the claim fails under *Swain* and *Harris*.[12]
25

26   _____

27   [12] A petitioner in state court must fully and with particularity the facts on which relief is
     sought.  *People v. Duvall*, 9 Cal. 4th 464, 474 (Cal. 1995) (citing *In re Swain*, 34 Cal. 2d 300
     (Cal. 1949) and *People v. Karis*, 46 Cal. 3d 612, 656 (Cal. 1988)).
28

1   (Lodged Doc. 11, at 4-5.)  The Court of Appeal California Supreme Court denied the claim

2   without comment.

3        Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

4   sought to be presented in federal habeas corpus.  *Rose*, 455 U.S. at 509.  The denial of a habeas

5   petition with a citation to *In re Swain*, 34 Cal. 2d at 300, indicates that the claims were not alleged

6   with sufficient particularity.  Because this is a denial on procedural grounds which can be cured,

7   state remedies are not exhausted.  *Harris v. Superior Court*, 500 F.2d 1124 (9th Cir. 1974) (en

8   banc).  However, the citation to Swain does not establish per se a failure to exhaust. When faced

9   with a *Swain* cite, the federal court must independently examine the California Supreme Court

10  petition to determine whether the claims are "fairly presented."  *Kim v. Villalobos*, 799 F.2d 1317,

11  1319 (9th Cir. 1986).

12       In this case, it is established by the express language of the state court's denial that the

13  petition did not include supporting documentation in the form of an affidavit or other reasonably

14  available documentary evidence.  Accordingly, Petitioner's claims were not "fairly presented" to

15  the California Supreme Court and there is no indication from the California Supreme Court that

16  the claims could not be renewed in another petition.  *See Johnson v. Lewis*, 929 F.2d 460, 463-64

17  (9th Cir. 1991) (where it is unclear whether state supreme court would entertain new petition,

18  claim is unexhausted and federal petition should be dismissed without prejudice).  Nevertheless, a

19  federal court may deny a claim on the merits even if that claim is unexhausted, if it does not state

20  a colorable claim under federal law.  28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at 623-624

21  (holding that an unexhausted claim may be dismissed pursuant to 28 U.S.C. § 2254(b)(2) "when

22  it is perfectly clear that the applicant does not raise even a colorable claim") (citing *Granberry v.*

23  *Greer*, 481 U.S. 129, 135 (1987)).

24       Here, it is clear that Petitioner cannot state a colorable claim under federal law.  First,

25  Petitioner's claim is bereft of constitutional authority.  Second, even if Petitioner had cited

26  governing Supreme Court authority, his assertions of error and prejudice are conclusory and

27  cannot entitle him to relief.  *See Hall*, 935 F.2d at 1110 (ruling that even pro se plaintiffs must

28  allege sufficient facts on which a recognized legal claim can be based; conclusory allegations will

27

1   not suffice); *see also Jones*, 66 F.3d at 204-05 (petitioner's conclusory allegations did not meet

2   the specificity requirement); *James*, 24 F.3d at 26 ("Conclusory allegations which are not

3   supported by a statement of specific facts do not warrant habeas relief").  A claim of ineffective

4   assistance for failure to call a witness is deficient where there is no showing as to how the witness

5   would have testified and how the testimony might have changed the outcome.  *Berry*, 814 F.2d at

6   1409; *Murray*, 751 F. 2d at 1535.

7        On its face, Petitioner's claim cannot be pleaded with particularity because it is based on an

8   unsubstantiated recollection of a conversation he claims to have had with his attorney.  He does

9   not identify an expert by name, nor does he demonstrate that any expert was willing and available

10   to testify on his behalf.  In fact, the manner in which Petitioner presents the claim suggests that he

11   does not know whether his attorney attempted to locate, much less located an expert who, after

12   reviewing the evidence, was able or willing to testify as Petitioner now asserts.  In short, this

13   claim necessarily fails because it is based on speculation that cannot be substantiated and cannot

14   be supported by specifics.

15        For the reasons set forth above, this subclaim must be rejected.

16   **IV.   PETITIONER'S CLAIMS RELATED TO DETECTIVE STIGERTS'S COMMUNICATION
         WITH THE JURY ARE NOT EXHAUSTED; HOWEVER, THE CLAIMS ARE NOT**

17   **COLORABLE UNDER FEDERAL LAW**

18        In Petitioner's sixth subclaim of ineffective assistance, he asserts that his counsel

19   prejudicially erred by failing to inquire further into Detective Stigerts's prohibited communication

20   with an unidentified juror or jurors.  (Pet. at 29.)  Related to this claim, Petitioner also argues in

21   Claim V that the Prosecutor committed prejudicial misconduct by allowing the communication,

22   and in Claim IV, subclaim F, that the trial court prejudicially erred in failing to sua sponte declare

23   a mistrial.  (Pet. at 38-39, 51.)  Petitioner presented these claims in his state habeas petition,

24   where the Superior Court rejected all of the claims for a failure to plead with sufficient

25   particularity.  Although the claims are unexhausted, this Court may deny these claims because

26   none are colorable under federal law.

27        The trial court resolved this claim on state habeas as follows:

28

1    Petitioner next claims that the trial court erred in failing to claim a mistrial on July
     20, 2005, after prosecution witness Detective Stigerts communicated to a juror, that
2    defense trial counsel was ineffective in failing to move for a mistrial, that the
     prosecution committed misconduct in allowing Stigerts to communicate with the
3    jurors[.]   . . .

4    Petitioner fails to attach reporter's transcript of the matter, nor does petitioner set
     forth the claim with sufficient particularity.  As such, the court cannot assess these
5    claims and denial is required under *Swain* and *Harris*.

6    (Lodged Doc. 11, at 5.)  The Court of Appeal and California Supreme Court denied the claim

7    without comment.

8        Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

9    sought to be presented in federal habeas corpus.  *Rose*, 455 U.S. at 509. When faced with a *Swain*

10   cite, the federal court must independently examine the California Supreme Court petition to

11   determine whether the claims are "fairly presented."  *Kim*, 799 F.2d at 1317.  In this case, it is

12   established by the express language of the decision of the Superior Court's decision that

13   Petitioner's petition did not include a Reporter's Transcript or other reasonably available

14   supporting documentary evidence.  Accordingly, Petitioner's claims were not "fairly presented"

15   to the California Supreme Court and there is no indication from the California Supreme Court that

16   the claims could not be renewed in another petition.  *See Johnson*,  929 F.2d at 463-64.

17   Nevertheless, a federal court may deny a claim on the merits even if that claim is unexhausted, if

18   it does not state a colorable claim under federal law.  28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at

19   623-624.

20       Here, it is clear that Petitioner cannot state a colorable claim under federal law.  Petitioner's

21   assertions of error and prejudice are conclusory, and cannot entitle him to relief.  *See Hall*, 935

22   F.2d at 1110 (ruling that even pro se plaintiffs must allege sufficient facts on which a recognized

23   legal claim can be based; conclusory allegations will not suffice); *see also Jones*, 66 F.3d at 204-

24   05 (petitioner's conclusory allegations did not meet the specificity requirement); *James*, 24 F.3d

25   at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not

26   warrant habeas relief").

27       Furthermore, a review of the record shows that Petitioner could not demonstrate prejudice

28   under the *Brecht* standard for any of these claims.  In support of these claims, Petitioner cites to

29

1   one page of the reporter's transcript in which Lao's counsel asked the record to reflect that the

2   court admonished Detective Stigerts in the morning about interacting with the jury after she made

3   a comment related to the juror spilling a large cup of coffee.  (Lodged Doc. 22 [Reporter's

4   Transcript, Vol. Two], at 510-511.)  The court characterized the communication as "an incidental

5   comment about a spill of a cup of coffee."  (*Ibid*. at 511.)  On its face, this type of benign

6   exchange hardly merits further inquiry.  Therefore, Petitioner cannot demonstrate that his trial

7   counsel's failure to further inquire into the communication constituted prejudicial error under the

8   standards set forth in *Strickland*.

9        As to prosecutorial misconduct, Petitioner does not assert, nor does the record support any

10   inference, that the prosecutor committed any error.  The record does reflect that the court

11   suggested to the prosecutor that she and Stigerts communicate by whispering directly into each

12   other's ear or passing notes to ensure that no one in the courtroom could overhear the

13   communication.  (Lodged Doc. 22 [Reporter's Transcript, Vol. Two], at 510-511.)  However,

14   there is no suggestion that the jurors were anywhere near the prosecution table or that anyone

15   actually overheard the prosecutor talking to the detective.  Thus, it is pretty clear that Petitioner

16   cannot demonstrate an error, much less that the prosecutor engaged in the "sort of egregious

17   misconduct . . . amount[ing] to a denial of constitutional due process."  *Donnelly v.*

18   *DeChristoforo*, 416 U.S. 637, 647 (1974).

19        Likewise, Petitioner provides no legal citation in support of his claim that the trial court had

20   a sua sponte duty to declare a mistrial under these circumstances, much less that the failure to do

21   so resulted in a federal constitutional error.  The Supreme Court has long held that a particular

22   manner of proceeding visits no constitutional violation upon a criminal defendant when, despite

23   the appointment of counsel, there is no trial-level objection to the procedure.  *See United States v.*

24   *Gagnon*, 470 U.S. 522, 527-29 (1985).  Once counsel has been appointed, due process generally

25   does not require a trial judge to act sua sponte on the defendant's behalf.  Rather, fairness appears

26   at the fundamental level so long as counsel is free to object when there is some imagined

27   infringement upon the defendant's rights:

28

> Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney.  Any other approach would rewrite the duties of trial judges and counsel in our legal system.

*Estelle*, 425 U.S. at 512.  Therefore, absent an overruled objection, or a denied request, there can be no arguments that the Constitution compelled a trial judge to conduct the trial in some different manner.  *See id*. at 507 ("the particular evil proscribed is *compelling a defendant, against his will*, to be tried in" the challenged manner (italics added)), *id*. at 512-13 ("the failure to make an objection to the court . . . , for *whatever* reason, is sufficient to negate the presence of *compulsion* necessary to establish a constitutional violation" (italics added)), *id*. at 512 n.9 ("[i]t is not necessary, if indeed it were possible, for us to decide whether this was a defense tactic or simply indifference. In either case, [defendant's] silence precludes any suggestion of compulsion").

In sum, Petitioner's claims related to Stigerts communication with a juror were not fairly presented to the state's highest court and therefore are not exhausted.  Moreover, these claims can be rejected as not colorable under federal law because Petitioner does not plead, and Respondent is unaware of, any legal theory by which this Court could conclude that a benign communication between a prosecution witness and juror about spilt coffee might have resulted in a federal constitutional error.

Accordingly, these claims should be denied as unexhausted or rejected as not colorable under federal law.

## V.   PETITIONER'S CLAIM REGARDING A MOTION TO SUBSTITUTE COUNSEL IS NOT EXHAUSTED; HOWEVER, IT IS NOT COLORABLE UNDER FEDERAL LAW

In Section IV, subclaim A, Petitioner asserts that the trial court prejudicially erred by failing to construe a letter he wrote to the judge as a motion to substitute counsel.  (Pet. at 29-30.)  Petitioner presented this claim in his state habeas petition, where it was rejected by the Superior Court for failing to plead with sufficient particularity.  That decision was not disturbed by the state appellate court or the state Supreme Court.   Although this claim is not exhausted, this Court may deny it as not colorable.

31

1   This claim was resolved by the state court as follows:

2       Petitioner next claims that on July 11, 2005, he was having a personal conflict with
    his defense counsel and wrote the court a letter asking for a hearing on the conflict,
3   but that the court would not accept or construe the letter as a motion under *People v.
    Marsden* (1970) 2 Cal.3d 118.  He claims error under *Marsden*[.]
4
        Petitioner, however, fails to attach a copy of the letter to the instant petition, or of
5   any relevant reporter's transcript on the matter.  The court's underlying file for Case
    No. 02F01534 does not appear to contain the letter nor does it contain a transcript,
6   although it contains a brief minute order entry for July 11, 2005 that "[o]utside the
    presence of the jury and the other parties, the Court heard from [defense counsel] and
7   [petitioner] regarding a letter written to the Court.  [Petitioner] wrote a letter to the
    Court regarding motions and his relationship with [defense counsel].  The Court
8   indicated that it would not accept motions that were not filed by the attorneys and that
    [defense counsel] would be representing [petitioner.]"
9
        The court's underlying file also contains a sealed envelope in which petitioner's
10  motion to dismiss, that the court declined to file on August 4, 2005; that motion,
    discussed more fully below regarding another claim, did not include any *Marsden*
11  request, nor is there any letter attached to the motion to dismiss.  Without a copy of
    the actual letter, the claim cannot be assessed by this court to determine whether the
12  letter or the discussion of it in court gave rise to any *Marsden* motion that was not
    considered.  What is contained in the sealed envelope, as noted above, contains no
13  *Marsden* mention. As such, the claim is denied (*Harris, supra*).

14  (Lodged Doc. 11, at 2-3.)

15      Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

16  sought to be presented in federal habeas corpus.  *Rose*, 455 U.S. at 509.  When faced with a

17  *Swain* cite, the federal court must independently examine the California Supreme Court petition

18  to determine whether the claims are "fairly presented."  *Kim*, 799 F.2d at 1317.  In this case, it is

19  established by the express language of the decision of the Superior Court's decision that the court

20  file did not contain a motion to substitute counsel and Petitioner did not submit a copy of any

21  letter that he submitted to the court which he now claims should have been interpreted as a

22  *Marsden* motion.  Furthermore, the claim would be unexhausted in any event because Petitioner

23  failed to plead the federal basis for it in his state habeas petition and he failed to include a

24  reference to a specific federal constitutional guarantee.  *Gray v. Netherland*, 518 U.S. 152, 162

25  163 (1996); *Shumway v. Payne*, 223 F.3d 982, 998 (2000) (a claim is not "fairly presented" to the

26  state court unless the petitioner "specifically indicated to that court that those claims were based

27  on federal law").  Mere invocations of due process do not meet the "minimal requirement that it

28  must be clear that a federal claim was presented."  *Cook v. Shriro*, 516 F.3d 802, 831 (9th Cir.

32

1   2008), quoting *Adams v. Robertson*, 520 U.S. 83, 89 n.3 (1997).  Accordingly, Petitioner's claims

2   were not "fairly presented" to the California Supreme Court and there is no indication from the

3   California Supreme Court that the claims could not be renewed in another petition.  *See Johnson*,

4   929 F.2d at 463-64.

5       Nevertheless, a federal court may deny a claim on the merits even if that claim is

6   unexhausted, if it does not state a colorable claim under federal law.  28 U.S.C. § 2254(b)(2);

7   *Cassett*, 406 F.3d at 623-624.  Here, Petitioner's claim is not colorable under federal law.  On its

8   face, Petitioner's claim acknowledges that he was represented by counsel at the time he made his

9   request.  Under California law the court was prohibited from receiving a motion from any party

10  other than Petitioner's counsel of record.  *McGee v. Superior Court*, 34 Cal.App.3d 201, 213

11  (1973), disapproved on other grounds in *People v. Norris*, 40 Cal.3d 51, 56 (1985).  Petitioner

12  cites no authority for his proposition that the trial court deprived him of federal due process by

13  refusing to file a motion that was not submitted by counsel of record, as mandated by California

14  law.

15      Accordingly, this claim should be denied as unexhausted or rejected as not colorable under

16  federal law.

17  **VI.   PETITIONER'S CLAIM REGARDING A REQUEST TO APPOINT AN
         ENGLISH INTERPRETER IS NOT EXHAUSTED; HOWEVER, IT IS NOT**

18  **COLORABLE UNDER FEDERAL LAW**

19      In Section IV, subclaim B, Petitioner asserts that the trial court prejudicially erred in failing

20  to appoint an English interpreter to assist him throughout the trial.  (Pet. at 29.)  Petitioner

21  presented this claim in his state habeas petition, which the Superior Court rejected claim for a

22  failure to plead with sufficient particularity.  That decision was not disturbed by the state

23  appellate court or the state Supreme Court.  Although this claim is not exhausted, this Court may

24  deny it as not colorable.

25      The state court resolved this claim on state habeas as follows:

26       Petitioner next claims that the trial court erred in denying his motion for an
         interpreter at trial[.]  Again, however, petitioner fails to attach any reasonably
27       available documentary evidence to show that he did not fully understand English at
         the time of trial.  Nor does he attach a copy of the reporter's transcript of the court's

28

1   denial of the motion for an interpreter.  As such, the claim fails under *Swain* and

2   *Harris*.

3   (Lodged Doc. 11, at 3.)

4       Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

5   sought to be presented in federal habeas corpus.  *Rose*, 455 U.S. at 509. When faced with a *Swain*

6   cite, the federal court must independently examine the California Supreme Court petition to

7   determine whether the claims are "fairly presented."  *Kim*, 799 F.2d at 1317.  In this case, it is

8   established by the express language of the decision of the Superior Court's decision that

9   Petitioner's petition did not include any Reporter's Transcript or copy of the trial court's order

10   denying Petitioner's request, or other reasonably available supporting documentary evidence.

11   Accordingly, Petitioner's claims were not "fairly presented" to the California Supreme Court and

12   there is no indication from the California Supreme Court that the claims could not be renewed in

13   another petition.  *See Johnson*, 929 F.2d at 463-64.  Nevertheless, a federal court may deny a

14   claim on the merits even if that claim is unexhausted, if it does not state a colorable claim under

15   federal law.  28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at 623-624.

16       Here, it is clear that Petitioner cannot state a colorable claim under federal law.  Petitioner's

17   assertions of error and prejudice are conclusory and cannot entitle him to relief.  *See Hall*, 935

18   F.2d at 1110 (ruling that even pro se plaintiffs must allege sufficient facts on which a recognized

19   legal claim can be based; conclusory allegations will not suffice); *see also Jones*, 66 F.3d at 204-

20   05 (petitioner's conclusory allegations did not meet the specificity requirement); *James*, 24 F.3d

21   at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not

22   warrant habeas relief").

23       Furthermore, a review of the record shows that Petitioner could not demonstrate prejudice

24   under the *Brecht* standard for this claim. Petitioner cites to the page of Reporter's Transcript in

25   which the court denied his untimely motion for an English Interpreter.  A review of the record

26   shows that on the first day of trial Petitioner requested an English Interpreter after he had been

27   communicating with his counsel effectively in English for the intervening three years between his

28   arrest and the trial date. (Lodged Doc. 22 [Reporter's Transcript, Vol. One], at 5.)  Petitioner's

34

1   attorney confirmed that he had communicated with his client in English for three years and that

2   Petitioner appeared to understand English and to be conversant in it.  (*Id*.)  Therefore, the court

3   did not "see any necessity for an interpreter."  (*Id*.)  Furthermore, it should be noted that, in

4   Petitioner's previous claim, he asserts that the trial court prejudicially erred by not construing a

5   letter he wrote to the court as a motion to substitute counsel and filing it as such (Pet. at 29-30),

6   but in this claim he asserts that the trial court prejudicially erred by refusing to appoint an English

7   interpreter for him on the first day of trial.  In fact, the record detailing years of pretrial motions

8   does not support an inference that Petitioner was not a natural citizen of the United States or that

9   he spoke or wrote in a language other than English, even though one could infer that he was of

10  Hmong descent.

11          Accordingly, this claim should be denied as unexhausted or rejected as not colorable under

12  federal law.

13  **VII.  PETITIONER'S CLAIM REGARDING TESTIMONY DESCRIBING THE
         BANDANA  IS NOT EXHAUSTED; HOWEVER, IT IS NOT COLORABLE**
14       **UNDER FEDERAL LAW**

15          In Section IV, subclaim C, Petitioner asserts that the trial court prejudicially erred when it

16  admitted Detective Stigerts's testimony describing the condition of the bandana recovered from

17  the Camry.  (Pet. at 29.)  The Superior Court rejected Petitioner's claim on state habeas for a

18  failure to plead with sufficient particularity.  That decision was not disturbed by the state

19  appellate court or the state Supreme Court.  Although this claim is unexhausted, this Court may

20  deny it as not colorable.

21          The Superior Court resolved this claim on state habeas as follows:

22           Petitioner next claims that the trial court erred in denying his motion to exclude any
         opinion that the bandana was used in a fashion to cover someone's face or any nature
23       thereof[.]

24           Petitioner fails to attach a reporter's transcript of the court's denial of the motion,
         thus the court cannot assess the claim.  Nor does petitioner make a prima facie
25       showing that the ruling was erroneous, or that the admission of the opinion was
         prejudicial.  As such, the claim fails under *Swain*, *Harris*, and *In re Bower* (1985) 38
26       Cal.3d 865.[13]

27       _____

28           [13] In *Bower*, the California Supreme Court held that:  "When a collateral attack on the
                                                              (continued…)

                                            35

1    (Lodged Doc. 11, at 4.)

2         Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

3    sought to be presented in federal habeas corpus. *Rose*, 455 U.S. at 509. When faced with a

4    *Swain* cite, the federal court must independently examine the California Supreme Court petition

5    to determine whether the claims are "fairly presented." *Kim*, 799 F.2d at 1317. In this case, it is

6    established by the express language of the decision of the Superior Court that Petitioner's petition

7    did not include a Reporter's Transcript, or copy of the trial court's order denying Petitioner's in

8    limine motion, or other reasonably available supporting documentary evidence. Accordingly,

9    Petitioner's claims were not "fairly presented" to the California Supreme Court and there is no

10    indication from the California Supreme Court that the claims could not be renewed in another

11    petition. *See Johnson*, 929 F.2d at 463-64. Nevertheless, a federal court may deny a claim on the

12    merits even if that claim is unexhausted, if it does not state a colorable claim under federal law.

13    28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at 623-624.

14         Here, it is clear that Petitioner cannot state a colorable claim under federal law. Petitioner's

15    assertions of error and prejudice are conclusory and cannot entitle him to relief. *See Hall*, 935

16    F.2d at 1110 (ruling that even pro se plaintiffs must allege sufficient facts on which a recognized

17    legal claim can be based; conclusory allegations will not suffice); *see also Jones*, 66 F.3d at 204-

18    05 (petitioner's conclusory allegations did not meet the specificity requirement); *James*, 24 F.3d

19    at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not

20    warrant habeas relief").

21         Furthermore, a review of the record shows that Petitioner could not demonstrate prejudice

22    under the *Brecht* standard for this claim. Stigerts testified that an inventory of the contents of the

23    abandoned stolen Camry included a blue bandana that was folded in a triangle shape and knotted

24    in a circle, as if to be worn around the head or the face. (Lodged Doc. 22 [Reporter's Transcript,

25    _____

26    (…continued)
judgment is mounted, the petitioner bears the burden of stating a prima facie case entitling him to

27    relief if true (*In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833, 588 P.2d 1257]) and of explaining any delay in making the claim. (*In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793].).)" *In re Bower*, 38 Cal.3d 865, 872 (1985).

28

Vol. 1], at 122.)  Petitioner's claim is rooted in the mistaken belief that this testimony was inadmissible under California law, and the equally incorrect assumption that the erroneous admission of evidence is necessarily a denial of federal due process.  Petitioner believes that Stigerts's testimony was inadmissible, presumably as irrelevant, in the absence of eyewitness testimony that a shooter wore a blue bandana over his head or face during the shooting.  (Pet. at 29.)  Not so.  Under California law, relevant evidence is anything tending to show a fact in dispute.  *See* Cal. Evidence Code § 350.  A patrol officer pursued the stolen Camry within minutes of the shooting.  (Lodged Doc. 6, at 2-7.)  Stigerts testified that the bandana was recovered from backseat of the Camry near Petitioner's jacket.  (*Ibid*.)  Subsequent testing determined that the folded triangle of the bandana contained Petitioner's saliva or sweat.  (*Ibid*.)  Taken together, this evidence tended to show that Petitioner was in the Camry at the time of the shooting and that he may have worn the bandana over his face in order to conceal his identity.  Therefore, even if Petitioner had preserved the evidentiary claim with a specific and timely objection to Stigerts's testimony, Petitioner could not show that it was inadmissible, much less that its admission amounted to a deprivation of federal due process.

Accordingly, despite Petitioner's failure to exhaust, this Court may dismiss the claims related to the admission of testimony about the condition of the bandana because the claims are not colorable under federal law.

## VIII. PETITIONER'S CLAIM REGARDING ADMISSION OF THE GANG EXPERT'S TESTIMONY IS PROCEDURALLY BARRED AND TO THE EXTENT THAT IT IS NOT, IT IS NOT COLORABLE UNDER FEDERAL LAW

Petitioner asserts multiple claims of error related to the trial court's admission of Detective Lee's expert testimony.  Specifically, Petitioner asserts that the trial court prejudicially erred by denying his pre-trial request to bifurcate the gang allegations from the substantive charges, thereby allowing the gang expert to inflame the jury's bias and testify in response to an improper hypothetical question.  (Pet. at 31-37.)  He also claims that the trial court improperly qualified Detective Lee as an expert.  (Pet. 36-37.)  And finally, he asserts that the trial court violated his Sixth Amendment right to confrontation by allowing Lee to testify.  (Pet. at 35-36.)  Petitioner

37

raised similar claims on direct appeal (Lodged Doc. 1, at 28-37), which were rejected in a

reasoned decision.  He then raised the same claim he presents here in his state habeas petition,

which the Superior Court rejected in a reasoned decision, that was left undisturbed by the Court

of Appeal and State Supreme Court.

To the extent that his claim was raised below, the Court of Appeal resolved it as follows:

> In response to a hypothetical question from the prosecutor, Detective Lee opined that a drive-by shooting committed in well-known HNS territory by three MOD members was committed for the benefit of the MOD street gang.  Her launches a three-pronged attack on the admission of this testimony: (1) Lee's opinion was inadmissible because the hypothetical question was not "rooted in the facts shown by the evidence" (citing *Gardeley, supra*, 14 Cal.4th at p. 618); (2) Lee's characterization of him as a "hard-core killer" was inflammatory and highly prejudicial; and (3) the opinion violated the confrontation clause of the United States Constitution because it was based on the "factual assertions of individuals who were not called to testify and were thus not subject to cross-examination."

> None of these arguments has been preserved for appeal because Her's trial attorney failed to make any objection to Detective Lee's opinion testimony when it was given. (Evid. Code, § 353; *People v. Kipp* (2001) 26 Cal.4th 1100, 1124; *People v. Garceau* (1993) 6 Cal.4th 140, 179.)  And the failure to raise a constitutional challenge to Lee's testimony in the trial court means that his Sixth Amendment argument has been forfeited as well.  (*People v. Benson* (1990) 52 Cal.3d 754, 788.)   "[T]he rule that a challenge to the admission of evidence is not preserved for appeal unless a specific and timely objection was made below stems from long-standing statutory and common law principles."  (*People v. Anderson* (2001) 25 Cal.4th 543, 586.)

> No cognizable challenge to Detective Lee's testimony is raised on this appeal.

(Lodged Doc. 6, at  5.)

On state habeas, Petitioner for the first time reconstituted this claim in its current format,

namely that the trial court prejudicially erred by denying his pre-trial request to bifurcate the gang

allegations from the substantive charges, thereby allowing the gang expert to inflame the jury's

bias and testify in response to an improper hypothetical question.

The state court resolved this claim as follows:

> Petitioner next claims that the trial court erred in denying petitioner's motion to bifurcate the gang enhancements[.]  Petitioner fails to attach the reporter's transcript of the court denying the motion.  Regardless, the claims fails, as the crimes were clearly gang-related and gang evidence was going to be admitted on the substantive charges regardless of whether the gang enhancements were bifurcated. As such, the claim fails under *Harris* and *Bower*.

(Lodged Doc. 11, at 4.)

38

1    In his current petition, Petitioner fails to acknowledge that on direct appeal the Court of

2   Appeal denied his claims that Lee's testimony was inadmissible as inflammatory or in response to

3   an improper hypothetical question, and that the court improperly qualified Lee as an expert, or

4   that his Sixth Amendment right to confrontation was violated by Lee's testimony.  These claims

5   are procedurally barred because the Court of Appeal rejected them on an independent and

6   adequate state law ground.  The rule in California is that "with certain exceptions, an appellate

7   court will not consider claims of error that could have been–but were not–raised in the trial

8   court." *People v. Vera*, 15 Cal. 4th 269, 275 (1997) (citing *People v. Saunders*, 5 Cal. 4th 580,

9   589-90 (1993)).  The Ninth Circuit has held that California's contemporaneous objection rule,

10   which requires objection at time of trial to preserve an issue for appeal, is an adequate procedural

11   bar.  *See Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1981).  In *Rich v. Calderon*, 187 F.3d

12   1064 (9th Cir. 1999), the Ninth Circuit declined to review six claims of prosecutorial misconduct

13   because the petitioner procedurally defaulted those claims by failing to make contemporaneous

14   objections, and because the California Court of Appeal invoked a procedural bar to their

15   consideration.  *Id.* at 1070.  The same rule acts here as an "adequate and independent" state

16   procedural bar.  *See Collier v. Bayer*, 408 F.3d 1279, 1283 (9th Cir. 2005).

17    Petitioner offers no argument that the contemporaneous objection rule invoked by the Court

18   of Appeal was not an adequate and independent basis for its decision.  Instead, he tries to avoid

19   the appellate court's imposition of the procedural bar by reframing his argument as a challenge to

20   the trial court's denial of a motion to bifurcate the gang allegation from the underlying offenses.

21   (Pet. 31-37.)  Petitioner presented this theory in his state habeas petition, where it was denied on

22   the merits in a reasoned decision.  Petitioner does not address the state court's resolution under

23   state law.  In any event, Petitioner's claim necessarily fails because it is based on the assertion

24   that the trial court erred as a matter of state law.  Habeas relief is unavailable for alleged errors in

25   the interpretation or application of state law. *See Estelle*, 502 U.S. at 67; *Beck*, 369 U.S. at 554-

26   55; *Little*, 449 F.3d at 1082-85 & n.6 (allegation that state law was misapplied or that the state

27   Supreme Court departed from its earlier decisions "neither gives rise to an equal protection claim,

28

1    nor provides a basis for habeas relief"); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985)

2    (writ is unavailable for alleged error in the interpretation or application of state law).

3         Petitioner's claim is procedurally barred and furthermore fails because he does not

4    demonstrate that the decision by the Court of Appeal or the state Superior Court was contrary to,

5    or involved an unreasonable application of, clearly-established federal law, or was based on an

6    unreasonable determination of the facts.  He has therefore failed to meet his burden under 28

7    U.S.C. § 2254(d). Accordingly, this claim should be denied.

### IX.    PETITIONER'S CLAIM REGARDING DENIAL OF A MISTRIAL MOTION DURING VOIRE DIRE IS NOT EXHAUSTED; HOWEVER, IT IS NOT COLORABLE UNDER FEDERAL LAW

10        In Section IV, subclaim E, Petitioner asserts that the trial court prejudicially erred when it

11   denied his motion for a mistrial based on the prosecutor's comments during voir dire.  (Pet. at

12   38.)  Petitioner presented this claim in his state habeas petition, where the Superior Court denied

13   it for a failure to plead with sufficient particularity.  This decision was not disturbed by the state

14   appellate court or the state Supreme Court.  Although this claim is not exhausted, this Court may

15   deny it as not colorable.

16        The Superior Court resolved this claim on state habeas as follows:

17         Petitioner next claims that the trial court erred in denying petitioners motion for
           mistrial made on July 12, 2005, based on questions posed during voir dire by the
18         prosecutor[.]  Petitioner fails to attach reporter's transcript of the denial of the motion,
           nor does petitioner set forth the claim with sufficient particularity.  As such, the court
19         cannot assess the claim and denial is required under *Swain* and *Harris*.

20   (Lodged Doc. 11, at 4.)

21        Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

22   sought to be presented in federal habeas corpus.  *Rose*, 455 U.S. at 509.  When faced with a

23   *Swain* cite, the federal court must independently examine the California Supreme Court petition

24   to determine whether the claims are "fairly presented."  *Kim*, 799 F.2d at 1317.  In this case, it is

25   established by the express language of the decision of the Superior Court's decision that the

26   petition did not include a Reporter's Transcript, or copy of the trial court's order, or other

27   reasonably available supporting documentary evidence.  Furthermore, a claim has not been

28   exhausted at the state court level unless the federal basis for it has been pleaded; furthermore, a

                                              40

1   claim for relief in habeas corpus must include reference to a specific federal constitutional

2   guarantee. *Gray*, 518 U.S. at 162 163; *Shumway*, 223 F.3d at 998 (a claim is not "fairly

3   presented" to the state court unless the petitioner "specifically indicated to that court that those

4   claims were based on federal law"). Accordingly, Petitioner's claims were not "fairly presented"

5   to the California Supreme Court and there is no indication from the California Supreme Court that

6   the claims could not be renewed in another petition. *See Johnson*, 929 F.2d at 463-64.

7   Nevertheless, a federal court may deny a claim on the merits even if that claim is unexhausted, if

8   it does not state a colorable claim under federal law. 28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at

9   623-24.

10      Here, it is clear that Petitioner cannot state a colorable claim under federal law. Petitioner's

11   assertions of error and prejudice are conclusory, and cannot entitle him to relief. *See Hall*, 935

12   F.2d at 1110 (ruling that even pro se plaintiffs must allege sufficient facts on which a recognized

13   legal claim can be based; conclusory allegations will not suffice); *see also Jones*, 66 F.3d at 204-

14   05 (petitioner's conclusory allegations did not meet the specificity requirement); *James*, 24 F.3d

15   at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not

16   warrant habeas relief"). In sum, Petitioner's claim fails because he cites to several Constitutional

17   Amendments, but again fails to state a factual basis or develop a legal theory in support of this

18   claim.

19      Furthermore, a review of the record shows that Petitioner could not demonstrate prejudice

20   under the *Brecht* standard for this claim. The record suggests that both defendants moved for a

21   mistrial because they interpreted one of the prosecutor's analogies during voir dire as personally

22   "malign[ing]" them because they believed the analogy implied they were not interested in seeking

23   the truth. (Lodged Doc. 22 [Reporter's Transcript, Vol. 1], at 38.) However the Prosecutor

24   disagreed with the defense attorneys' characterization of her analogy and said that it did not

25   reference these attorneys personally, nor was it directed at them. (*Ibid.*) The court denied the

26   mistrial motion. (*Ibid.*) On its face, this claim is unlikely to demonstrate prejudice where the

27   comment was not directly about the defendants' attorneys or the defendants, the voire dire

28   encompassed two panels, and the trial lasted for nearly three weeks.

41

1    Accordingly, despite Petitioner's failure to exhaust, this Court may dismiss the claim

2    because on its face it is not colorable under federal law.

3    **X.    PETITIONER'S CLAIM THAT THE TRIAL COURT REFUSED TO FILE HIS
         995 MOTION IS NOT EXHAUSTED; HOWEVER, IT IS NOT COLORABLE
4        UNDER FEDERAL LAW**

5    In Section IV, subclaim F, Petitioner asserts that the trial court prejudicially erred when it

6    refused to file a "995 motion."  Petitioner submitted directly to the court although he was

7    represented by counsel.  (Pet. at 39-40.)  In the last reasoned decision on the merits, the Superior

8    Court rejected Petitioner's claim as follows:

9        Petitioner next claims that on August 4, 2005, he "filed" a "995" motion and the
         court "erred in denying" it.  He attaches a copy of a part of the motion, and has
10       changed the dates of its signing to 2009 instead of 2005 in the copy attached to the
         petition; this part, contained with the remainder of the motion in a sealed envelope in
11       the court's underlying file, as noted above, claims that he cannot be prosecuted for
         murder because the punishment for murder cannot be a life sentence since the passage
12       of the Determinate Sentencing Law.  Petitioner attempts to repeat only this part of the
         motion, in this habeas petition.
13
         The motion was never accepted for filing by the court.  Petitioner does not show that
14       was error, as petitioner was represented by counsel at the time, and only his counsel
         could make a motion on his behalf at that time (see *McGee v. Superior Court* (1973)
15       34 Cal.App.3d 201, 213, disapproved on other grounds in *People v. Norris* (1985) 40
         Cal.3d 51, 56).
16
         Nor would this part of the motion have been granted if it had been entertained, as the
17       motion is completely baseless.  Petitioner was not charged with a murder committed
         before 1978; rather, petitioner was charged with and convicted of crimes committed
18       in 2002, long after the Determinate Sentencing Law was enacted.  Regardless, at all
         times, both before and after the Determinate Sentencing Law was enacted, murder
19       continued to punishable by 25-years-to-life.  The Determinate Sentencing Law had no
         effect on punishment for murder, and had no effect on Penal Code §§ 187, 189, or
20       190.

21   (Lodged Doc. 11, at 6.)

22   Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

23   sought to be presented in federal habeas corpus.  *Rose*, 455 U.S. at 509.  When Petitioner

24   presented this claim to the state court, he failed to plead the federal basis for it in his state habeas

25   petition and he failed to include a reference to a specific federal constitutional guarantee.

26   (Lodged Doc. 10, at 33-35.)  Therefore, the federal dimension of the claim is unexhausted.  *Gray*,

27   518 U.S. at 162 163; *Shumway*, 223 F.3d at 998.  Where the petition is determined to be a mixed

28   petition, the petitioner must either amend the petition to delete the unexhausted claims and

42

1   proceed with the remaining exhausted claims, or accept dismissal without prejudice to pursue the

2   unexhausted claims in state court.  *Rose*, 455 U.S. at 510.

3        However, a federal court may deny a claim on the merits if, as in this case, it does not state

4   a colorable claim under federal law.  28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at 623-624.  The

5   Superior Court rejected Petitioner's claim because it was not colorable under California law.

6   (Lodged Doc. 11, at 6.)  This claim is based on an assertion that the trial court erred as a matter of

7   state law, which was rejected by the reviewing state court.  Habeas relief is unavailable for

8   alleged error in the interpretation or application of state law. *See Estelle*, 502 U.S. at 67; *Beck*,

9   369 U.S. at 554-55; *Little*, 449 F.3d at 1082-85 & n.6 (allegation that state law was misapplied or

10  that the state Supreme Court departed from its earlier decisions "neither gives rise to an equal

11  protection claim, nor provides a basis for habeas relief"); *Middleton*, 768 F.2d at 1085 (writ is

12  unavailable for alleged error in the interpretation or application of state law).

13       Accordingly, despite Petitioner's failure to exhaust, this Court may dismiss the claim

14  because on its face it is not colorable under federal law.

15  **XI.   PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED IN ADMITTING WITNESS
        INTIMIDATION TESTIMONY WAS NOT EXHAUSTED AND FAILS TO STATE A**
16      **COLORABLE CLAIM FOR RELIEF**

17       In Section IV, subclaim H, Petitioner asserts that the trial court abrogated his right to due

18  process under the Fourteenth Amendment by admitting witness intimidation evidence.  (Pet. at

19  39-40.)  Petitioner advanced the same argument based on state law in his direct appeal that he

20  now relies upon in his petition.  (Lodged Doc. 1, at 34-36.)  The Court of Appeal's denial is the

21  last reasoned decision on the merits of the claim.  *Avila*, 297 F.3d at 918 (citing *Ylst*, 501 U.S. at

22  803-04).

23       The Court of Appeal resolved Petitioner's claim as follows:

24        In the middle of prosecution witness Rindy Her's testimony, the court held an in-
          chambers hearing, during which Rindy disclosed he had been assaulted, his house had
25        been fired upon, and he had received anonymous calls threatening to kill him if he
          testified. (Rindy stated that he was worried about testifying, because there were a lot
26        of Kinson Her's friends out there, making him feel unsafe.)

27        Over defendants' objection that the prejudicial effect of the evidence outweighed its
          probative value (Evid. Code, § 352), the trial judge allowed Rindy to describe these
28

                                            43

acts in front of the jury, for the sole purpose of evaluating his demeanor.  Prior to admitting this evidence, the judge gave the following instruction:

"Ladies and gentlemen, at this time I am going to give you a limiting instruction. You must follow this instruction.  'You are about to hear testimony concerning some threats and acts of violence directed toward this witness.  This evidence is only to be considered in evaluating [Rindy] Her's attitude and demeanor towards testifying.  The evidence is not to be considered against Houa Lao and Kinson Her. There's no evidence connecting [codefendants] Houa Lao and Kinson Her to these acts.'"

Rindy thereupon recounted the acts of witness intimidation and stated his belief that they were committed by gang members associated with his cousin, defendant Her.

Her now claims that the admission of this evidence was prejudicial error, because it "painted [him] in the minds of the jurors as a gang member and a violent individual with violent associates," and was not "fairly relevant" to Rindy's credibility.  The argument lacks merit.

"'Evidence a witness is afraid to testify is relevant to the credibility of that witness and is therefore admissible.  [Citations.]  Testimony a witness is fearful of retaliation similarly relates to that witness's credibility and is also admissible.  [Citation.]  It is not necessary to show threats against the witness were made by the defendant personally, or the witness's fear of retaliation is directly linked to the defendant for the evidence to be admissible.'"  (*Olguin, supra*, 31 Cal.App.4th at p. 1368, quoting *People v. Gutierrez* (1994) 23 Cal.App.4th 1576, 1587-1588.)  As the court noted in *Olguin*:  "A witness who testifies despite fear of recrimination of any kind by anyone is more credible because of his or her personal stake in the testimony.  Just as the fact a witness expects to receive something in exchange for testimony may be considered in evaluating his or her credibility [citation], the fact a witness is testifying despite fear of recrimination is important [in] fully evaluating his or her credibility.  For this purpose, it matters not the source of the threat.  It could come from a friend of the defendant, or it could come from a stranger who merely approves of the defendant's conduct or disapproves of the victim. . . . [¶] Regardless of its source, the jury would be entitled to evaluate the witness's testimony knowing it was given under such circumstances."  (*Olguin, supra*, at pp. 1368-1369.)

"We will not overturn or disturb a trial court's exercise of its discretion under [Evidence Code] section 352 in the absence of manifest abuse, upon a finding that its decision was palpably arbitrary, capricious and patently absurd."  (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)  Here, the evidence was admitted with a proper cautionary admonition that it was to be considered solely for purposes of its effect on Rindy's demeanor and attitude toward testifying. The jury was also reminded there was no evidence connecting defendants to the acts described.   We find no error, prejudicial or otherwise, in the admission of the intimidation testimony.

(Lodged Doc. 6, at 16-18.)

For purposes of exhausting state court remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee.  *Gray*, 518 U.S. at 162-163; *Shumway*, 223 F.3d at 998.  A petitioner must label a federal habeas claim as "federal."  *Casey*,

1   386 F.3d at 912 n13.  Where the petition is determined to be a mixed petition, the petitioner must

2   either amend the petition to delete the unexhausted claims and proceed with the remaining

3   exhausted claims, or accept dismissal without prejudice to pursue the unexhausted claims in state

4   court.  *Rose*, 455 U.S. at 510.  Petitioner raises this federal due process claim for the first time in

5   the instant petition; therefore, the claim was not fairly presented and is unexhausted.

6   Nonetheless, a federal court may deny a claim on the merits even if that claim is unexhausted

7   when it does not present a colorable claim under federal law.  28 U.S.C. § 2254(b)(2); *Cassett*,

8   406 F.3d at 623-624.

9       Should this Court reach the merits of Petitioner's claim, it still fails.  The Court of Appeal

10  rejected Petitioner's argument in a detailed analysis of the facts presented in the record.  (Lodged

11  Doc. 6, at 16-18.)  Petitioner's current claim suggests that he did not agree with the trial and

12  appellate court's factual findings based on the record.  However, these findings are presumed

13  correct in the absence of clear and convincing proof that the state-court finding is in error, 28

14  U.S.C. § 2254(e)(1).  Petitioner presents no such evidence.

15      Moreover, Petitioner fails to advance any argument demonstrating that his claim is

16  colorable under federal law.  Relying on California law, the appellate court expressly disagreed

17  with petitioner's contention that the trial court abused its discretion to admit witness intimidation

18  evidence.  (Lodged Doc. 6, at 11-13.)  Petitioner's claim rests entirely on his disagreement with

19  the state courts' interpretation of its own law.  Petitioner cannot challenge a state court's

20  interpretation of state law in federal habeas.  The United States Supreme Court has "repeatedly

21  held that a state court's interpretation of state law including one announced on direct appeal of the

22  challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546

23  U.S. 74, 76 (2005) (per curiam), citing *Estelle*, 502 U.S. at 62; *Mullaney v. Wilbur*, 421 U.S. 684,

24  691 (1975); *see also Milton v. Wainwright*, 407 U.S. 371, 377 (1972) [federal habeas is

25  unavailable to retry state issues].  Consequently, appellant's claim that the appellate court

26  misapplied the California Evidence Code is simply not cognizable here.

27      Finally, Petitioner assumes prejudice, but fails to demonstrate it.  The trial court instruction

28  cautioned the jury as to the proper use of the witness intimidation evidence if they credited it.

45

(Lodged Doc. 6, at 16.)  There is an "almost invariable assumption of the law that jurors follow

their instructions," *Marsh*, 481 U.S. at 206, and nothing in the record suggests that the jurors here

did otherwise.  In light of these instructions, Petitioner cannot show that admission of the witness

intimidation evidence rendered his trial so fundamentally unfair as to violate federal due process.

*Donnelly*, 416 U.S. at 647 48.

Under these circumstances, admission of witness intimidation testimony did not deny

Petitioner due process or a fair trial under Constitutional standards.  Petitioner has failed to show

a colorable claim of federal constitutional error.  Accordingly, his claim should be denied,

notwithstanding his failure to exhaust the federal dimension of his claim.

## XII. PETITIONER'S CLAIMS THAT INSTRUCTIONAL ERROR VIOLATED DUE PROCESS WAS REJECTED BY THE CALIFORNIA SUPREME COURT, AND THAT DECISION WAS NOT CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, SUPREME COURT PRECEDENT

In his subclaim I, sub-subclaims one through five, Petitioner asserts that a variety of

instructional errors under state law deprived him of federal due process of law.[14]  (Pet. at 43-50.)

Specifically, Petitioner contends that the trial court erred by:  (1) instructing with CALJIC No.

5.55 over defense counsel's objection; (2) instructing with CALJIC No. 2.71.5 over defense

counsel's objection; (3) instructing with CALJIC Nos. 2.03, 2.06, 2.51, 2.52; (4) denying

Petitioner's motion to instruct with a modified version of CALJIC No. 2.90; (5)  instructing with

CALJIC No. 5.17.  (*Ibid*.)  Petitioner fails to show that the state courts' denial of these claims was

contrary to, or an unreasonable application of, clearly-established federal law.

Petitioner joined his co-defendant's arguments as to several of these claims on direct appeal

(Lodged Doc. 1 at 45-49); however, he reasserted all but sub-subclaim two on state habeas.  The

Court of Appeal's rejection of sub-subclaim two is the last reasoned state court decision on the

merits, while the Superior Court's rejection on state habeas is the last reasoned state court

decision on the merits of the remaining claims.

_____

[14] Petitioner also periodically asserts a violation of a federal constitutional right under the Sixth Amendment.  (Pet. at 43-50.)  Respondent does not address this claim as its basis is unfathomable.

46

1    The Court of Appeal rejected sub-subclaim two as follows:

2    ### A. **CALJIC No. 2.71.5—Adoptive Admissions**

3    Her claims the trial court erred when it instructed the jury regarding "Adoptive
     Admission—Silence, False or Evasive Reply to Accusation." (CALJIC No. 2.71.5.)
4    The instruction told the jury that if they should find Her made a statement under
     conditions which reasonably afforded him an opportunity to reply, yet he failed to
5    make a denial or made an evasive statement in the face of an accusation connecting
     him to the commission of the crime, then the circumstance of his response may be
6    considered as an admission that the accusation was true.

7    Her argues that the admission instruction violated his constitutionally protected right
     to remain silent.  He reasons that the only evidence that could have been subject to
8    CALJIC No. 2.71.5 was his interview with Detective Keller, after *Miranda* warnings
     had been given.  Relying on *People v. Edmondson* (1976) 62 Cal.App.3d 677, he
9    claims that where a person invokes his Fifth Amendment rights, silence cannot be
     used against that person as an adoptive admission of guilt.

10
     The claim must be rejected for at least two reasons.  First, Her did not invoke his
11   right to remain silent.  He waived his right to remain silent and agreed to speak with
     Detective Keller.  Her was never silent; he continued to talk and continued to make
12   denials and evasive responses to Keller.  Because he waived his right to silence, Her
     cannot now claim prejudice in an instruction that allowed the jury to use silence as an
13   adoptive admission.

14   Second, the instruction was not applicable only to the interview with Detective
     Keller.  As the Attorney General points out, Her's girlfriend testified that on the night
15   of the shooting she asked him if he knew anything about the large number of police
     cars and helicopters in the area.  Her at first responded negatively, but then added, I
16   didn't want to tell you because I [would] rather have you not know."  This statement
     could well be deemed as an evasive response in the face of an implied accusation.
17
     In any event, we are satisfied that error, if any, in the adoptive admission instruction
18   was harmless beyond a reasonable doubt.  (See *People v. Hardy* (1992) 2 Cal.4th 86,
     154.)  The instruction touched on tangential issues and did not play an important role
19   in the jury's evaluation of whether Her was guilty of murder.

20   (Lodged Doc. 6, at 20-22.)

21       The Superior Court resolved the remaining sub-subclaims on state habeas as follows:

22   Petitioner next claims that it was error to deny petitioner's motion to rewrite
     CALJIC No. 2.90 to delete the "abiding conviction" language, and that appellate
23   counsel was ineffective in failing to raise the issue on appeal.  [¶]  The use of the
     "abiding conviction" language in the reasonable doubt instruction has long been
24   upheld by the courts, including the United States Supreme Court (see *Victor v.
     Nebraska* (1994) 511 U.S. 1; *People v. Campos* (2007) 156 Cal.App.4th 1228).  The
25   claim therefore fails.

26   Petitioner next claims that it was error to give CALJIC No. 5.17, because the
     revised language in that instruction is cast in objective terms and takes no account of
27   petitioner's subjective belief, and that appellate counsel was ineffective in failing to
     raise the issue on appeal.  [¶]  CALJIC No. 5.17, however, is not cast in objective
28

47

1      terms.  Rather, the revised instruction as given at trial instructed on "the actual but
       unreasonable belief in the necessity to defend against imminent peril," "even
2
       though a reasonable person in the same situation seeing and knowing the same facts
3      would not have had the same belief," when the peril is one that "is apparent, present,
       immediate and must be instantly dealt with, or must so appear at the time to the
4      slayer."  That is subjective, not objective, thus the claim is denied.

5       Petitioner next claims that it was error to give CALJIC Nos. 2.03, 2.06, 2.51, and
       2.52 on consciousness of guilt and motive, as these instructions were argumentative
6      and rendered the trial fundamentally unfair.  [¶]  Petitioner cites no case law that has
       disapproved of these instructions, nor does petitioner state with particularity how any
7      of these instructions is erroneous.  As such, petitioner fails to set forth a prima facie
       case for relief, requiring denial under *Bower*.

8

9      (Lodged Doc. 11, at 5-6.)

10          A challenge to jury instructions does not generally state a federal constitutional claim.  *See*

11     *Middleton*, 768 F.2d at 1085 (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v.*

12     *Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  To obtain federal collateral relief for errors in the

13     jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial

14     that the resulting conviction violates due process.  *Estelle*, 502 U.S. at 72.  Additionally, the

15     instruction may not be judged in artificial isolation, but must be considered in the context of the

16     instructions as a whole and the trial record.  *Id*.  The court must evaluate jury instructions in the

17     context of the overall charge to the jury as a component of the entire trial process.  *See United*

18     *States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

19     Furthermore, even if it is determined that an instruction violated due process, a petitioner can only

20     obtain relief if the unconstitutional instruction had a substantial influence on the conviction and

21     thereby resulted in actual prejudice.  *Brecht*, 507 U.S. at 637 (whether the error had a substantial

22     and injurious effect or influence in determining the jury's verdict); *see also Hanna v. Riveland*, 87

23     F.3d 1034, 1039 (9th Cir. 1996).  Here, the Court of Appeal and the Superior Court found no

24     error under state law and also found no prejudice.  Petitioner does not rebut these findings with

25     citations to the record or law.  Because a federal court may not issue the writ of habeas corpus on

26     the basis of a perceived error of state law, the issue of whether the trial court failed to instruct the

27     jury under state law is not cognizable in this proceeding, and Petitioner's claim fails.

28

1    Furthermore, to the extent that Petitioner asserts federal constitutional error, his claim also

2    fails.  Petitioner has failed to explain the federal basis for his claims, much less to show that the

3    decision of the California court was contrary to, or involved an unreasonable application of,

4    clearly-established federal law, or was based on an unreasonable determination of the facts.  He

5    has therefore failed to meet his burden under 28 U.S.C. § 2254(d).  Moreover, even if Petitioner

6    had cited governing Supreme Court authority, his assertions of error and prejudice are conclusory,

7    and cannot entitle him to relief.  *See Hall*, 935 F.2d at 1110 (ruling that even pro se plaintiffs

8    must allege sufficient facts on which a recognized legal claim can be based; conclusory

9    allegations will not suffice); *see also Jones*, 66 F.3d at 204-05 (petitioner's conclusory allegations

10   did not meet the specificity requirement); *James*, 24 F.3d at 26 ("Conclusory allegations which

11   are not supported by a statement of specific facts do not warrant habeas relief").

12   Petitioner has failed to show that the decision of the California courts rejecting the

13   instructional error claims was contrary to, or involved an unreasonable application of, clearly-

14   established federal law, or was based on an unreasonable determination of the facts.  He has

15   therefore failed to meet his burden under 28 U.S.C. § 2254(d).  Accordingly, his claims based on

16   allegations of instructional error should be denied.

17   **XIII. PETITIONER'S CLAIM THAT THE TRIAL COURT MADE SENTENCING ERRORS UNDER STATE LAW DOES NOT APPEAR TO BE EXHAUSTED, BUT THE CLAIM MAY BE DENIED BECAUSE IT IS NOT COLORABLE**

18

19   Petitioner's sixth claim asserts that the trial court erred under California law by imposing a

20   life sentence for non-capital murder.  Petitioner advanced the same claim in his state habeas

21   petition, which was denied by the state superior court in a reasoned decision.

22   The Superior Court resolved Petitioner's claim of sentencing error as follows:

23   Petitioner, in a related claim, claims that he should be subject to a determinate sentencing triad for murder.  [¶]  This is an incorrect statement of the law. Non-capital murder, at the time of the commission of the crimes as well as before and after that time, is punishable under Penal Code § 190 by a life sentence.

24

25

26   (Lodged Doc. 11, at 6.)

27   To the extent that Petitioner now asserts a federal basis for this claim, it was not presented

28   or reviewed by the state courts and therefore it is unexhausted.  *Gray*, 518 U.S. at 162 163;

49

1   *Shumway*, 223 F.3d at 998.  Nevertheless, a federal court may deny a claim on the merits even if

2   that claim is unexhausted.  28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at 623-624.

3       On its face, Petitioner's claim rests on a disagreement with the state courts' interpretation of

4   its own laws.  Therefore, it must fail because he cannot challenge a state court's interpretation of

5   state law in federal habeas.  *Bradshaw*, 546 U.S. at 76.  The United States Supreme Court has

6   "repeatedly held that a state court's interpretation of state law including one announced on direct

7   appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw*, at

8   76, citing *Estelle*, 502, U.S. at 67 68; *Mullaney*, 421 U.S. at 691; *see also Milton*, 407 U.S. at 377.

9   Consequently, appellant's claim that the trial court committed a sentencing error under state law

10  is simply not cognizable here.

11      Petitioner has failed to show a colorable claim of federal constitutional error.  Accordingly,

12  his claim should be denied, notwithstanding his failure to exhaust the federal dimension of his

13  claim.

14  **XIV. PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED IN ADMITTING HIS
     STATEMENT WAS NOT EXHAUSTED AND FAILS TO STATE A COLORABLE CLAIM
15   FOR RELIEF**

16      In Section VII, Petitioner claims that his federal constitutional right to a fair trial, due

17  process and equal protection were violated by the trial court's admission of statements he made

18  prior to being advised of his Constitutional rights.  (Pet. at 39-40.)  Petitioner made a factually

19  identical argument on direct appeal (Lodged Doc. 1, at 37-44), which was denied by the Court of

20  Appeal in a reasoned decision.  Petitioner reasserted this claim in state habeas (Lodged Doc. 9, at

21  18-22), where it was rejected with a citation to  *In re Waltreus*, 62 Cal. 2d at 218 (Lodged Doc.

22  11, at 8).  The state Court of Appeal's decision is the last reasoned decision on the merits of the

23  claim.  *Avila*, 297 F.3d at 918 (citing *Ylst*, 501 U.S. at 803-04).  It rejected the state law version of

24  Petitioner's claim as follows:

25      On July 2, 2002, Detective John Keller traveled to Minnesota, where he interviewed
     Her.  During trial, Her's counsel made an amorphous [FN. 4] oral motion in limine, in
26   which he claimed that Her's statements to Keller were elicited in violation of his
     rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L. Ed. 2d 694].  Counsel
27   argued that his client's waiver was not free and voluntary, because he was only 15
     years old, had "minimal contact with the justice system" and did not have an adult
28   present during questioning.  He also asserted that there was "pre-*Miranda* custodial

                                                    50

interrogation" and that Detective Keller engaged in subterfuge and deceit.  The trial court denied the motion, finding that Her had previous contact with the criminal justice system, had previously been advised of his *Miranda* rights, and that his waiver was knowing, intelligent and voluntary.  Echoing trial counsel's arguments, Her claims the trial court's ruling was incorrect.

[FN. 4]  There is no written motion in the record and counsel never described the remedy he sought.  Consequently, we are unable to ascertain from the record exactly what evidence Her was seeking to exclude from the trial.  The trial court characterized the motion as one to suppress Her's statement to Detective Keller.

We need not reach the merits of the ruling, because Her has totally failed to demonstrate that the admission of his statements to Detective Keller was prejudicial.

Admission of statements obtained in violation of *Miranda* are subject to review under the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L. Ed. 2d 705, 710-711] (*Chapman*), under which we inquire whether the error may be deemed harmless beyond a reasonable doubt.  (See *Arizona v. Fulminante* (1991) 499 U.S. 279, 310 [113 L. Ed. 2d 302, 331-332]; *People v. Cunningham* (2001) 25 Cal.4th 926, 994.)

In the interview, Her steadfastly denied knowing Lao or anything about the shooting.  In his brief, Her makes no attempt to demonstrate that the admission of his statements influenced the jury verdict or significantly affected the outcome of the trial.  Prejudice is never presumed; it must be affirmatively demonstrated.  "Anyone who seeks on appeal to predicate a reversal of conviction on error must show that it was prejudicial."  (*People v. Archerd* (1970) 3 Cal.3d 615, 643; *People v. Bell* (1998) 61 Cal.App.4th 282, 291.)  Because Her makes no such showing, we must conclude "that the error complained of did not contribute to the verdict obtained" (*Chapman*, *supra*, 386 U.S. at p. 24 [17 L. Ed. 2d at p. 710]) and therefore any error was harmless beyond a reasonable doubt. [Fn. 5]

[Fn. 5]  In his factual recitation, Her claims that his statements to Detective Keller were used to search a residence where police discovered letters indicative of gang affiliation and that his denial that he knew defendant Lao was used to show consciousness of guilt. However, since this passage (1) does not appear under a separately headed argument; (2) does not address the issue of prejudice; and (3) is unaccompanied by a single citation to the record, it does not qualify as cognizable legal argument.  (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2; *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282; see also *Opdyk v. California Horse Racing Bd*. (1995) 34 Cal.App.4th 1826, 1830.)

(Lodged Doc. 6, at 18-20)

To the extent that Petitioner now asserts a federal basis for this claim, it was not presented or reviewed by the state courts and therefore it is unexhausted.  *Gray*, 518 U.S. at 162 163; *Shumway*, 223 F.3d at 998.  Where the petition is determined to be a mixed petition, the petitioner must either amend the petition to delete the unexhausted claims and proceed with the remaining exhausted claims, or accept dismissal without prejudice to pursue the unexhausted claims in state

51

1   court.  *Rose*, 455 U.S. at 510.  However a federal court may deny a claim on the merits even if

2   that claim is unexhausted.  28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at 623-624.

3        Petitioner fails to state a colorable claim under federal law.  He advanced the same

4   argument in his direct appeal that he now relies upon in his petition.   The Court of Appeal

5   rejected his claim with a detailed analysis of the facts presented in the record.  (Lodged Doc. 6, at

6   18-20.)  Petitioner does not attempt to explain how the Court of Appeal's decision was contrary to

7   clearly established Supreme Court precedent or based on an unreasonable determination of the

8   facts.  A fair inference from Petitioner's claim is that he disagreed with the state appellate court's

9   decision; however, these findings are presumed correct in the absence of clear and convincing

10  proof that the state-court finding is in error, 28 U.S.C. § 2254(e)(1).  *Taylor v. Maddox*, 366 F.3d

11  992, 1000 (9th Cir. 2004).  Petitioner presents no such evidence.  Nor does Petitioner set forth any

12  facts that might establish prejudice.  Therefore, he has clearly failed to meet his burden to

13  demonstrate that the admission of his statement rendered his trial so fundamentally unfair as to

14  violate federal due process.  *Donnelly*, 416 U.S. at 647 48.  Therefore, Petitioner's claim must be

15  rejected.

16       Under these circumstances, admission of Petitioner's statement did not deny him due

17  process or a fair trial under Constitutional standards.  Accordingly, his claim should be denied,

18  notwithstanding his failure to exhaust the federal dimension of his claim.

19  **XV.  THE STATE COURT'S REJECTION OF PETITIONER'S CRUEL AND UNUSUAL
20       PUNISHMENT CLAIM WAS OBJECTIVELY REASONABLE**

21       In Petitioner's eighth and ninth claims, he argues that his sentence constitutes cruel and

22  unusual punishment.  (Pet. at 60-68.)  In a reasoned decision, the Court of Appeal noted and

23  rejected Petitioner's argument:

24       Appellant Her claims that a state prison sentence of 25 years to life violates both the
       state and federal prohibitions against cruel and unusual punishment.  Preliminarily,
25     we note the issue has not been preserved for review, since Her's counsel did not
       challenge the constitutionality of his sentence below.  (*People v. Norman* (2003) 109
26     Cal.App.4th 221, 229 (*Norman*); *People v. DeJesus* (1995) 38 Cal.App. 4th 1, 27.)

27       However, we shall reach the merits of the claim in the interest of judicial economy
       and to forestall "the inevitable ineffectiveness-of-counsel claim."  (*Norman, supra*,
28     109 Cal.App.4th at p. 230.)  The Eighth Amendment to the United States Constitution
       proscribes "cruel and unusual punishment" and contains a 'narrow proportionality

52

principle' that 'applies to noncapital sentences.'" (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117], quoting *Harmelin v. Michigan* (1991) 501 U.S. 957, 996-997 [115 L.Ed.2d 836, 866] (conc. opn. of Kennedy, J., joined by O'Connor & Souter, JJ.)  That principle prohibits "'imposition of a sentence that is grossly disproportionate to the severity of the crime'" (*Ewing, supra*, 538 U.S. at p. 21 [155 L.Ed.2d at p. 117], quoting *Rummel v. Estelle* (1980) 445 U.S. 263, 271 [63 L.Ed.2d 382, 389]), although in a noncapital case, successful proportionality challenges are 'exceedingly rare.'"  (*Ibid*.)

   Her relies primarily on *People v. Dillon* (1983) 34 Cal.3d 441, 479 (Dillon) to advance his disproportionality argument.  We are not persuaded.  In Dillon, a 17-year-old boy was convicted of first degree felony murder and sentenced to life imprisonment for shooting an armed man who approached him during the defendant's attempted robbery of a marijuana farm.  (*Id*. at pp. 451-452.)  Both the judge and jury believed the defendant should be committed to the California Youth Authority, but since he was ineligible, the court had no alternative but to sentence him to life imprisonment.  (*Id*. at pp. 485-487.)  Noting that the other participants in the robbery received relatively 'petty chastisements' (id. at p. 488), as well as the harshness of the felony-murder rule, the state Supreme Court concluded the defendant's punishment was cruel and unusual within the meaning of article I, section 17 of the California Constitution (*id*. at pp. 486-489).

   By contrast, the jury here found that Her committed a premeditated murder to promote the activities of a criminal street gang.  Unlike the youth in Dillon who had no prior trouble with the law, Her was a documented gang member who was on probation when he committed the murder and fled the jurisdiction the next day.

   In *Demirdjian, supra*, 144 Cal.App.4th 10, the Court of Appeal for the Second Appellate District, Division Four, upheld the constitutionality of a 25-year-to-life sentence for a defendant who committed two unprovoked murders at the age of 15.  (Id. at p. 16.)  The court quoted from *People v. Guinn* (1994) 28 Cal.App.4th 1130, which upheld a sentence of life without parole in the case of a defendant who committed an unprovoked murder at age 17:  "[W]hile that punishment is very severe, 'the People of the State of California in enacting the provision [authorizing this punishment] made a legislative choice that some 16-and 17-year-olds, who are tried as adults, and who commit the adult crime of special circumstance murder, are presumptively eligible to be punished with LWOP.  We are unwilling to hold that such a legislative choice is necessarily too extreme, given the social reality of the many horrendous crimes, committed by increasingly vicious youthful offenders, which undoubtedly spurred the enactment.'"  (*Demirdjian, supra*, 144 Ca1.App.4th at p. 16, quoting *Guinn, supra*, 28 Cal.App.4th  at p. 1147.)

   The logic of *Guinn* and *Demirdjian* applies here.  Unlike the youthful offender in *Guinn* whose sentence totally precludes his release, Her's indeterminate sentence means that he stands a reasonable chance of leaving the prison walls before he reaches old age.  There is nothing shocking or unconscionable about such a disposition.  [Fn. 8]

   We conclude that a life sentence with the possibility of parole for a criminally sophisticated 15 year old convicted of a  special-circumstance murder to promote the objectives of a criminal street gang violates neither the Eighth Amendment nor article 1, section 17 of the California Constitution.

[Fn. 8]  Her also cites the United Nations Convention on the Rights of the Child and the United States Supreme Court case of *Roper v. Simmons* (2005) 543 U.S. 551, 575

1   [161 L.Ed.2d I, 25], which found that imposition of the death penalty for juvenile
2   offenders constituted cruel and unusual punishment.  These authorities are so far
    removed from the present circumstances that the argument built around them requires
3   no separate response.

4   (Lodged Doc. 6, at 28-32.)  The California Supreme Court did not disturb this decision, which

    Petitioner fails to demonstrate was objectively unreasonable.[15]

6       The Eighth Amendment, which applies against the states under the Fourteenth Amendment,

7   *see Robinson v. California*, 370 U.S. 660 (1962), provides:  "Excessive bail shall not be required,

    nor excessive fines imposed, nor cruel and unusual punishments inflicted."  *See Harmelin v.*

8   *Michigan*, 501 U.S. 957, 962 (1991).  Under the Eighth Amendment, challenges to the length of a

9   sentence are rarely granted.  *Solem v. Helm*, 463 U.S. 277, 289-290 (1983) ("'[outside] the

10  context of capital punishment, *successful* challenges to the proportionality of particular sentences

11  [will be] exceedingly rare'" (original italics, n. omitted)).  The United States Supreme Court has

12  cautioned that reviewing courts "should grant substantial deference to the broad authority that

13  legislatures necessarily possess in determining the types and limits of punishments for crimes, as

14  well as to the discretion that trial courts possess in sentencing convicted criminals."  *Id*. at 290 (n.

15  omitted).

16      In a 5-to-4 decision in *Solem*, the United States Supreme Court held that "a criminal

17  sentence must be proportionate to the crime for which the defendant has been convicted."  *Solem*,

18  463 U.S. at 290.  In the Supreme Court's more recent decision in *Harmelin*, however, a divided

19  court retreated from *Solem* and rejected the notion that the Eighth Amendment requires strict

20  proportionality between a sentence and the offense for which it is imposed.  The author of the

21  lead opinion for the Court in *Harmelin*, Justice Scalia, joined by Chief Justice Rehnquist,

22

23      [15] Petitioner reasserted this claim in a second and successive habeas petition filed first in
    the Court of Appeal, then in the Superior Court, and subsequently in the Supreme Court (Lodged
24  Doc. 19, 21, 23), where it was denied as untimely with a citation to *In re Clark* 5 Cal.4th 750,
    767, 768 (Petitioner's Exhibits, Appendix IV, at 3).  The *Clark* bar is independent and adequate.
25  *Bennett v. Mueller*, 322 F.3d 573, 582-83 (2003).  However, because Petitioner did not re-file the
    petition in the Court of Appeal after filing in the Superior Court, the second version of this claim
26  is also unexhausted.  Nevertheless, Respondent addresses the merits of the first version of this
    claim, which was timely asserted at every level of review on direct appeal.  The Court of
27  Appeal's rejection of this claim was the last reasoned decision on the merits of a timely and
    exhausted version of this claim.
28

1   concluded that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality

2   guarantee." *Harmelin*, 501 U.S. at 965.  In the concurring plurality opinion in *Harmelin*, Justice

3   Kennedy, joined by Justices O'Connor and Souter, concluded that although the Cruel and

4   Unusual Punishment Clause "encompasses a narrow proportionality principle," *id*. at 997

5   (Kennedy, J., concurring), the Eighth Amendment "does not require strict proportionality between

6   crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate'

7   to the crime."  *Id*. at 1001 (Kennedy, J., concurring) (citing *Solem*, 463 U.S. at 288, 303).

8       One commentator has observed that the *Harmelin* decision "undeniably curtails the

9   authority of appellate courts to conduct proportionality review," and "requires courts to pay great

10   deference to legislative judgments concerning both the goals of criminal punishment and the

11   length of sentences necessary to attain those goals."  Harv. L.Rev. Assn., Cruel and Unusual

12   Punishments Clause–Proportionality in Sentencing:  *Harmelin v. Michigan* (1991), 105 Harv. L.

13   Rev. 245, 251.

14       Petitioner attacks the Opinion's rejection of his claim of cruel and unusual punishment.  He

15   argues:

16       The Appellate Court's holding "that a life sentence with the possibility of parole for
17   a criminally sophisticated 15 year old convicted of a  special-circumstance murder to
     promote the objectives of a criminal street gang violates neither the Eighth
18   Amendment nor article 1, section 17 of the California Constitution," (Exhibit A, p.
     32), is deeply flawed, for it embraces assumptions about Her, such as his supposed
19   "sophistication," and his gang-related mental state, that are unsupported by the
     evidence.  In the same section, the Court of Appeals also explicitly refused to give
20   any consideration to the maxims of international law cited by Petitioner.  [¶]

21       The facts of the instant case can be readily distinguished from *Demirjidian*.
     Petitioner Her may have been a passenger in the rear of the automobile that was
22   involved in a shooting but there was no evidence that he was in control of the
     situation.  Petitioner Her was only fifteen at the time of the incident and had no record
23   of violent crime.  Perhaps most importantly, the instant case involved a shoot out
     between two sets of armed individuals.  There is no proof that Her was a participant
24   in the shooting, or if a participant, that he did not act in self-defense.  Clearly under
     the facts of the instant case[,] Her's punishment is so disproportionate in light of his
25   individual culpability that it violates the prohibitions against cruel and unusual
     punishment contained in the Eighth Amendment[,] and should be vacated.

26   (Pet. at 60, 63.)  However, Petitioner does not demonstrate that the Opinion is contrary to, or

27   involved an unreasonable application of, clearly-established federal law.  Instead, Petitioner

28   labors at length to show that his sentence constituted cruel or unusual punishment under

1    California law and international law.  (*Id.* at 60-67.)  But his argument does nothing to show that

2    the Opinion was "contrary to, or involved an unreasonable application of, clearly established

3    Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

4    Petitioner's claim fails for this preliminary reason.  Second, Petitioner's cruel-and-unusual

5    argument with reference to California law is wholly beside the point, because whether some act

6    has violated the law of some state forms "no part" of an inquiry whether that act violated the

7    Constitution.  *See Estelle*, 502 U.S. at 67; *see also Beck*, 369 U.S. at 554-55; *Little*, 449 F.3d at

8    1082-83 & n.6.

9        Under the relevant standards, the Opinion's determination that Petitioner's sentence was not

10   cruel nor unusual was not unreasonable under federal law.  Petitioner fails to cite, and Respondent

11   is unaware of, any United States Supreme Court precedent holding that a life sentence, with or

12   without the possibility of parole, is cruel and unusual when the crime is a homicide.  In fact, the

13   most recent Supreme Court authority in this area notes that,

14       It bears emphasis, however, that while the Eighth Amendment forbids a State from
15       imposing a life without parole sentence on a juvenile nonhomicide offender, it does
         not require the State to release that offender during his natural life.  Those who
16       commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus
         deserving of incarceration for the duration of their lives.  The Eighth Amendment
17       does not foreclose the possibility that persons convicted of *nonhomicide* crimes
         committed before adulthood will remain behind bars for life.  It does forbid States
18       from making the judgment at the outset that those offenders never will be fit to
         reenter society.

19   *Graham v. Florida*, __ U.S. ___; 130 S. Ct. 2011, 2031 (May 10, 2010) (emphasis added).

20   Petitioner's potential life term of imprisonment for gang-related homicide and attempted

21   homicide does not offend the federal Constitution.

22       Here again, Petitioner has failed to show that the Opinion was contrary to, or involved an

23   unreasonable application of, clearly-established federal law, or was based on an unreasonable

24   determination of the facts.  He has therefore failed to meet his burden under 28 U.S.C. § 2254(d).

25   Accordingly, his eighth and ninth claims should be denied.

26

27

28

56

**XVI. PETITIONER'S CLAIM THAT THE APPELLATE COURT ERRED BY NOT REMANDING HIS CASE FOR RESENTENCING IS PROCEDURALLY BARRED AND WITHOUT MERIT**

In his tenth claim, Petitioner argues that the appellate court's failure to remand his case for resentencing "deprived him of the opportunity to receive a more reasonable sentence from the trial court." (Pet. at 69.)

Petitioner first asserted this claim in a second and successive habeas petition filed out of order first in the Court of Appeal, then in the Superior Court, and in the Supreme Court (Lodged Doc. 19, 21, 23), where it was denied as untimely with a citation to *In re Clark* 5 Cal.4th 750 (Petitioner's Exhibits, Appendix IV, at 3). The *Clark* bar is independent and adequate. *Bennett v. Mueller*, 322 F.3d at 582-83. Furthermore, the claim is also unexhausted because it was not raised at every level of review.

However, even if the claim were timely and exhausted, it is still not colorable under federal law. First, Petitioner's claim is bereft of constitutional authority. Second, even if Petitioner had cited governing Supreme Court authority, his assertions of error and prejudice are conclusory and cannot entitle him to relief. *See Hall*, 935 F.2d at 1110 (ruling that even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based; conclusory allegations will not suffice); *see also Jones*, 66 F.3d at 204 05 (petitioner's conclusory allegations did not meet the specificity requirement); *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). Finally, Petitioner could not demonstrate that the Court of Appeal committed any error. When the Court of Appeal reduced Petitioner's sentence to include the possibility of parole it did not remand the matter for resentencing because "the trial court's intent to impose a life term for the murder conviction is unambiguous, we find no need for a remand." (Lodged Doc. 6, at 28-29.) This finding is presumed correct in the absence of clear and convincing proof that the state-court finding is in error, 28 U.S.C. § 2254(e)(1). *Taylor*, 366 F.3d at 1000. Petitioner presents no such evidence. Nor does Petitioner set forth any facts that might establish prejudice.

Petitioner's claim of error based on the Appellate Court's failure to remand the matter to the trial court for resentencing is procedurally barred and unexhausted. However, even if this

57

1  Court were to find the procedural bar inadequate, the unexhausted claim may still be denied

2  because Petitioner has failed to raise even a colorable federal claim, *see Cassett*, 406 F.3d at 624.

3  **XVII.  PETITIONER'S CLAIM OF "CUMULATIVE ERRORS" IS UNEXHAUSTED AND**
   **SUBJECT TO DISMISSAL; THIS COURT MAY NEVERTHELESS DENY IT BECAUSE IT**
4  **FAILS TO RAISE EVEN A COLORABLE FEDERAL CLAIM**

5        In his eleventh and final claim, Petitioner argues that "[t]he combined and cummulative

6  [sic] errors of insufficient evidence, Ineffective Assistance of Counsel, Trial Court errors, Jury

7  Instructional errors, Prosecutor misconduct, and sentencing errors have compounded the

8  prejudice caused by the other [sic], to the petitioner's detriment and are caused [sic] for a reversal

9  of the petitioner's case." (Pet. at 70.)  Petitioner first presented this claim in his state habeas

10 petition.  The Superior Court's denial of this claim was the last reasoned state court decision on

11 the merits.

12       The state court resolved Petitioner's cumulative error claim as follows:

13        Finally, petitioner claims that the cumulative errors are prejudicial and require
          reversal of the judgment.  Petitioner has shown no error, and reversal is not required.
14

15 (Lodged Doc. 11, at 8.)

16        In his current petition, Petitioner states that "his rights to freedom of speech, fair and

17 impartial jury, due process, free from fruel [sic] and unusual punishment, effective assistance of

18 counsel and equal protection, were violated and prejudice occurred against the the 1st, 5th, 8th

19 and 14th Amendments as guaranteed by the U.S. Constitution." (Pet. at 70.)  To the extent that

20 Petitioner now asserts a federal basis for his claim of cumulative error, it was not presented or

21 reviewed by the state courts and therefore it is unexhausted.  *Gray*, 518 U.S. at 162 163;

22 *Shumway*, 223 F.3d at 998 (a claim is not "fairly presented" to the state court unless the petitioner

23 "specifically indicated to that court that those claims were based on federal law").   However a

24 federal court may deny a claim on the merits even if that claim is unexhausted.  28 U.S.C. §

25 2254(b)(2); *Cassett*, 406 F.3d at 623-624.

26       Petitioner's claim here should be denied because it is not colorable.  First, Petitioner's claim

27 is bereft of constitutional authority.  His citation to *Harrington v. California*, 395 U.S. 250, 255

28 (1968) (dissenting opn. of Brennan, J.) cites the dissenting opinion of Justice Brennan in a case

58

that did not address the constitutional doctrine of cumulative error.  Similarly, his citation to

*United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) is unhelpful, because that case was

a federal criminal case on direct appeal.  His remaining authorities are California state cases that

cannot provide the basis for relief.  *See* 28 U.S.C. § 2254(d)(1).  Second, even if Petitioner had

cited governing Supreme Court authority, his assertions of error and prejudice are conclusory and

cannot entitle him to relief.  *See Hall*, 935 F.2d at 1106 (ruling that even pro se plaintiffs must

allege sufficient facts on which a recognized legal claim can be based; conclusory allegations will

not suffice); *see also Jones*, 66 F.3d at 204 05 (petitioner's conclusory allegations did not meet

the specificity requirement); *James*, 24 F.3d at 26 ("Conclusory allegations which are not

supported by a statement of specific facts do not warrant habeas relief").

Finally, Petitioner's assertion of cumulative error fails because he has failed to show the

existence of any error, as Respondent has already demonstrated.  *See United States v. Haili*, 443

F.2d 1295, 1299 (9th Cir. 1971) ("any number of 'almost errors,' if not 'errors,' cannot constitute

error") (quoting *Hammond v. United States*, 356 F.2d 931, 933 (9th Cir. 1966)).

Because Petitioner has failed to raise even a colorable federal claim, *see Cassett*, 406 F.3d

at 624, his unexhausted claim of cumulative error should be denied.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Amended Petition for

Writ of Habeas Corpus be denied.

Dated:  September 13, 2010                          Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
STEPHEN G. HERNDON
Supervising Deputy Attorney General

/s/ ***Melissa Lipon***

MELISSA LIPON
Deputy Attorney General
*Attorneys for Respondent*

MJL:sra
SA2010301345
31090052.doc

1

## DECLARATION OF SERVICE BY U.S. MAIL

2

Case Name:   **Her v. Jacquez**                              No.:   **2:-0-cv-00612 JAM KJM**

3

4

I declare:

5

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

6

7

8

On September 13, 2010, I served the attached **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

9

10

11

Kinson Her, F-08643
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA  95532-7500
Petitioner In Pro Per

12

13

14

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 13, 2010, at Sacramento, California.

15

16

17

18

                    /s/ **_Melissa J. Lipon_**
                              Declarant

19

20

21

22

23

24

25

26

27

28